J. W. WHEELER v. THE STATE OF TEXAS.

1. It is not an answer to a *scire facias* upon a forfeited bail bond, that the defendant had been arrested, tried and convicted of another felony subsequent to the execution of the bail bond, and had escaped from custody.

2. Should the defendant, after conviction, be retained in custody, the fact, if pleaded, would be an answer to the *scire facias*.

ERROR from McLennan. Tried below before the Hon. J. W. Oliver.

On the twenty-sixth day of April, 1872, the grand jury of McLennan county presented an indictment against W. A. Posey, in the District Court of said county, charging him with the "theft of a two-year old heifer." On the twenty-ninth day of April, 1872, defendant, Posey, executed his bail bond in the usual form, in the sum of $250, with plaintiff in error, J. W. Wheeler, and one S. H. Barber as sureties for the sum of $125 each. This cause was numbered on the criminal docket of said court as No. 1583. Previous to this time, to-wit, on the fifteenth day of December, 1871, another indictment had been presented by the grand jury of McLennan county, in the District Court, in which said Posey was charged with the "theft

of two mules," which said indictment was numbered
1436. Upon this last indictment Posey executed his bail
bond in the usual form, and on the second day of May,
1872, the case was tried in the District Court of McLen-
nan county, when the defendant was convicted and his
punishment assessed at hard labor in the penitentiary for
five years, and judgment rendered upon the verdict. Im-
mediately upon conviction, the sheriff of McLennan coun-
ty and his deputies, having already custody of Posey,
started to the common jail of McLennan county, but on
the way thither he (Posey) broke from their custody, es-
caped, and went at large, and has never again been ar-
rested. Subsequent to this, to-wit, on the tenth day of
May, 1872, cause No. 1583, in which plaintiff in error was
surety on Posey's bail bond, was called for trial, and de-
fendant not appearing when called, judgment *nisi* was
rendered against him and his sureties. On the nineteenth
day of June, 1872, citation issued to sureties, which be-
ing served on plaintiff in error, he, on the eighth day of
August, 1872, filed his answer, setting out these facts *in
extenso*, and praying for his discharge from liability by
reason thereof. On final hearing said answer was ad-
judged insufficient by the court below, and judgment *nisi*
made final as to him and the principal.

*George Clark*, for appellant.—The only question pre-
sented by the record is, did the conviction of W. A. Po-
sey, the principal in the bail bond in this case, in cause
No. 1436, and his caption by the officers of the State in
pursuance of such conviction, operate as a discharge to
his sureties in this case? Plaintiff in error contends that
it did.

I. The responsibilities, rights and privileges of a surety
in a bail bond under our law are clearly defined. A party
arrested for an offense that is bailable has the privilege of

choosing his jailers. He may remain in the custody of the law and its officers, or by the execution of a bail bond, with acceptable sureties, he may transfer the custody of his person from the law to his sureties. Upon the execution of their undertaking the latter stand in the place and stead of the officers of the law. To them the custody of his person is delivered ; they are his jailers, and during the time such bond is in effect he is constantly in a state of commitment. (Gay v. The State, 20 Texas, 504.) This is a tacit condition annexed to all such undertakings— a consideration for the contract, if such a term is permissible, between them and the State. They obligate themselves to pay to the State a certain sum of money in case they fail to produce the body of their principal at a certain time and in a certain place, but only in case that the State intrusts them with absolute control over the person and movements of such principal until the time designated. Should the State, through its officers, reassume custody of the accused before the time designated, the bond becomes *functus officio*, and an attempt would hardly be made to enforce its penalty. It is not conceived that this will be controverted.

Again, certain duties and responsibilities are devolved upon the State by such undertakings. With the surrender of custody to the bail, she engages to do an act that will militate against the safe keeping of the prisoner during the existence of the obligation, and that, if she assumes temporary custody, for purposes of trial or the like, and a final termination thereof should not be had, that she will again consign the accused to the keeping of his bondsmen. Mistrials are often had in our courts, in criminal matters, without prejudice to the interests of the State in matters of bail. Bonds taken previous thereto are not necessarily annulled by such proceedings. A mistrial being had, a prisoner is released on his original

bail bond, but not to go at large. In contemplation of law, he is again given over by the State into the hands of his bail. If the State in any instance fails, through her officers, to take this important step, it is not well understood how she can call upon the sureties to make good a loss which has accrued through her own negligence.

To apply these principles to the case at bar: Posey, the principal in the bail bond in this cause, being already under indictment and bond for felony, in cause No. 1436, was indicted by the grand jury of McLennan county on the twenty-sixth of April, 1872, and gave the bond now before the court on error. On the second of May, 1872, said cause No. 1436 being called for trial, the accused was presented by his bail in open court, and the State through its law officers took charge of his body. The sureties of Posey in either case have never been entrusted with his custody since. The records of the court make manifest that he has been duly convicted of a felony, and adjudged to serve a term of five years in the State penitentiary. The officers of the law say that he escaped while on his way to the common jail of McLennan county. With that, we contend, we have nothing to do. He did not escape from us. We are prepared to again assume his custody, according to the original undertaking, whenever he is again surrendered to us; and submit, with confidence, that until such surrender does take place, we cannot in law be held responsible for the safe custody of a party, when by the law itself he was taken from our custody and the same never given back to us. Such construction would conflict with elementary principle, and authorities are hardly necessary.

II. The principal was duly convicted of a felony by the judgment of a court of competent jurisdiction, not appealed from. Plaintiff in error respectfully submits that this fact alone furnishes a sufficient answer to the

*scire facias* in this case, and entitles him to relief from the penalty. Under this conviction the principal is as if he were dead. (Loflin *et al.* v. Fowler, 18 Johnson, 335.) By this conviction in No. 1436 Posey was taken out of the power of his bail by the judgment of the law. (Ib.) For the purposes of this case it is a matter of no consequence whether he is now undergoing the punishment awarded him or not. If he was now at hard labor in the State penitentiary, in strict accordance with the judgment of the court, that would furnish no additional cause for relief to plaintiff in error. And yet the sufficiency of an answer setting out that fact would hardly be questioned. Where, then, are we to draw the line? After a service of two or three years in the State prison? or upon delivery to the warden? or while the convict is in the county jail, awaiting the necessary arrangements for his safe transportation? Is the accused any more a convict then, and utterly out of the power of sureties, than he is when upon the rendition of verdict and the entry of judgment the officers of the law lay their hands upon him? Have the sureties any control over him at the latter moment and would the officers of the law yield to their demands for the custody of his body? No, the mandate of the law is imperious, and there is then but one custodian for him—that of the law itself. The State, through its officers, becomes his jailer, and declines to share the responsibility of his safe-keeping with any one. Yet the record presents the State in the attitude of calling upon a surety to make good the appearance of a convict before her courts, when she herself forbade that surety from interposing in any manner with the execution of her judgment as to his person. Relieving the surety from the custody of the accused, and assuming the task herself, she yet holds the former to a rigid accountability for that custody he did not have. It is submitted that the moment a conviction

12

of the principal was had in 1436, that moment, the principal being in the custody of the law, the sureties in No. 1583 were absolved from all liabilities, and that liability on their part could not again be incurred without a setting aside of such conviction, and a redelivery of the principal into the hands of his sureties.

III. The State is in no condition to demand the enforcement of the penalty in this case. It is a general principle of law that where the performance of the condition of a bond or recognizance has been rendered impossible by the act of God, or of the law, or of the obligee, the default is excused. (Co. Lit., 206a; Bac. Abr., tit. Conditions, (Q); The People v. Manning, 8 Cowen, 297.) Baron Comyn lays down the rule, that the performance of a condition should be excused by an obstruction of the obligee, or by the interruption of the performance by him. (Com. Dig., tit. Condition, L. C.; see also People v. Bartlett, 3 Hill, 570.)

I know of no rule of law that makes an exception in favor of the State. An application of the principle to the case at bar seems pertinent. The State, payee and obligee in the bond, and representing in addition thereto the majesty of the law, by its own obstruction interrupts the performance of the condition. The performance of this condition has been rendered impossible by the act of the law and of the obligee. The operation of the law, and the acts of the obligee, through its courts, put an effectual stop to the progress of our custody, and placed it beyond the power of plaintiff in error to comply with his engagement. That the principal was not present when cause No. 1583 was called for trial, can in no manner be imputed to the negligence of his sureties. They had yielded up his body in obedience to the inexorable demands of the law, and the State, through its officers, had him in her clutches. That he escaped therefrom, and is

now an outlaw at large, is attributable to the negligence of the State, who was acting through its duly accredited agents and servants; and yet, as plaintiff in this action in the court below, she seeks to take advantage of her own wrong, and to enforce a penalty for a default caused solely by her own negligence. The attempt, if successful, will make a new era in the history of jurisprudence.

It may be contended (as it was in the court below) that the State would interpose, and had interposed, no obstacle to the rearrest of the escaped convict in this case, and that if the sureties would escape liability, it could be effected by diligence on their part in hunting out the offender and delivering him to the officers of the law. This hardly merits an answer. We undertook no such charge as that, nor are we peace officers or State police. Our undertaking was to keep, not to catch; and the principal was safely kept until the authorized officers of the State relieved us of the responsibility.

IV. *Per contra*, it may be urged that the answer filed in this cause contains neither of the three statutory causes that will exonerate a surety from liability (Paschal's Digest, Art. 2884); and that the decision of this court, in Barton v. The State (24 Texas, 250, as noted by Mr. Paschal), makes it incumbent on the sureties to specify some one of these causes to entitle them to relief. A careful reading of the latter case will show the mistake of the able compiler of that very valuable work. And a plain and literal construction of the statute manifests that by the enumeration of these causes, it was not the legislative intent to prohibit the entertainment of others that might be deemed sufficient by the courts of the State. If a defendant in two separate indictments for felonies should be imprisoned for life, or a long term of years, on the first a forfeiture would hardly be taken for his failure to answer to the second. Or if forfeiture should be taken, an

answer setting out that fact would, I suppose, in most courts, be held sufficient. And yet the statute makes no provision for such contingency.

*Attorney-General*, for appellee.

Ogden, J.—On the twenty-sixth of April, 1872, W. A. Posey was indicted for the theft of a heifer, and executed his bail bond, with plaintiff in error as one of his sureties, in a sum of $250, for his appearance to answer to the charge in the indictment. Previously the said Posey had been indicted for the theft of two mules. He was first tried and convicted of the theft of the two mules, but made his escape from the sheriff while on his way to jail to await judgment. Eight days after the case for the theft of the heifer was called, and the defendant not appearing, a judgment *nisi* was entered upon his bail bond, and a *scire facias* issued to his sureties. At the next term of the court the sureties appeared and answered by setting up the above facts, by reason of which they claimed to be discharged from liability. The court adjudged the answer insufficient, and the judgment *nisi* was made final, and from this last judgment a writ of error has been sued out.

The very ingenious argument of counsel for plaintiff in error might be very plausible if it were not founded on false premises throughout. The defendant was not taken from the constructive custody of plaintiff in error on account of the theft of the heifer, and we hardly think it will be contended that a party who is out on bail for one offense may not be arrested and tried for another without releasing his sureties. In the case at bar, if the sureties had answered that their principal was in the custody of the law, that he was in the jail or the penitentiary for another offense, this would have excused, for the time at least, his non-appearance, and we think that such an an-

swer would clearly have been within the second cause specified in Article 2884, Paschal's Digest. Nor can we understand by what process of reasoning counsel arrive at the conclusion that the escape of the prisoner was the fault of the law or the government. Had he obeyed the mandates of the law, as his sureties had bound themselves that he would do, we think there would have been no occasion for the forfeiture of their bond.

By the escape from the hands of the sheriff the defendant committed another crime, for which he alone is directly answerable, but indirectly his sureties should be held responsible. The answer sets out neither cause specified in Article 2884, Paschal's Digest, for the non-appearance of their principal; and upon the authority of Burton v. The State (24 Texas, 252), we must decide that none other will exonerate either the principal or his sureties from liability on their appearance bond.

There is no error in the judgment of the District Court, and it is affirmed.

AFFIRMED.