464 P.2d 884

STATE of New Mexico, Plaintiff-Appellee,

v.

UNITED BONDING INSURANCE COMPANY, Defendant-Appellant.

No. 8819.

Supreme Court of New Mexico.

Feb. 9, 1970.

Easley & Reynolds, Hobbs, for defendant-appellant.

James A. Maloney, Atty. Gen., Mark B. Thompson, III, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

FRANK B. ZINN, District Judge.

United Bonding Insurance Company and its agent seek relief from a judgment ordering forfeiture of the full amount of two criminal appeal bonds, one for $5,000 and the other for $2,000, which they had written for Jerry Ray James following his conviction for separate felonies in the district court of Lea County. James's convictions were affirmed by this court in State v. James, 76 N.M. 376, 415 P.2d 350 (1966) and 76 N.M. 416, 415 P.2d 543 (1966).

This court's commitments were issued on July 6, 1966 and on July 12, 1966, directing the sheriff of Lea County to take James into custody and deliver him to the superintendent of the penitentiary to carry out the sentences of imprisonment.

The sheriff was unable to execute the writs of commitment because James was incarcerated in Mississippi. James later escaped but was arrested in Arizona by federal officers and subsequently was convicted and sentenced to a term in federal prison. The sheriff sent hold orders to the authorities having custody of James, advising them of the New Mexico commitments. United, through its agent, was notified of the commitments by the sheriff and was aware of James's detention in Mississippi before the commitments were issued.

On May 8, 1968, twenty-two months after receipt of the commitments, the sheriff made his return, advising this court of his inability to execute them because of the federal custody of James.

The assistant district attorney, in the name of the State, filed a motion in each of James's cases in the district court asking judgment against United for the amount of the recognizances because of James's failure to appear and comply with the judgments and sentences imposed. The court issued orders to show cause directed to James, United and its attorney in fact. The court found in each of the orders that James had failed to appear to comply with the judgment and sentence, and it ordered the recognizances forfeited and issued a bench warrant for James's apprehension. The orders directed United to appear to show cause why judgment should not be entered against it for the amount of the recognizances. Service of the motion and show cause order was made on James and on appellants. A hearing was held on the matter with the two cases consolidated for this purpose, and on January 7, 1969 the court entered its judgment against United and its attorney in fact for $7,000, the full amount of the recognizances.

Appellants seek reversal of the judgment on three points, the first being lack of jurisdiction. The contention is made that the district court having lost jurisdiction over the cases by virtue of the previous appeals to this court was without power to proceed with action on the

recognizances. This contention is without merit. It is true that the district court's jurisdiction over the criminal proceedings against James terminated with the appeal to this court. However, the actions on the recognizances, though normally pursued in the criminal causes of action, are actually independent civil proceedings brought by the state against appellants pursuant to statute. Section 41–4–22, N.M.S.A.1953 Comp. Supporting this view and stating the law decisive of appellants' point is 8 Am.Jur.2d, Bail and Recognizance, § 146:

"An action by the state or federal government on a criminal bail bond is civil, not criminal, in nature. The action does not involve the guilt or innocence, conviction or acquittal, of any person; though it may be a proceeding arising in a criminal case, it is in no sense a continuation of the criminal proceedings in which the bail bond was given. Hence, the procedural rules governing civil actions and appeals or writs of error prevail in actions on bail bonds or recognizances.

"Where a bond has been declared forfeited on non-appearance of the principal in a criminal case, and the enforcement of the bond liability is prosecuted in a civil action, transfer of the criminal case to another court will not affect the jurisdiction of the first court to determine the enforcement of the forfeiture."

A similar action, State v. United Bonding Ins. Co., 244 La. 716, 154 So.2d 374 (1963), held that a proceeding to forfeit a bail bond is a civil proceeding arising out of contract between the surety of the accused and the state.

■The second point contends that the forfeiture was invalid because no call was made to ascertain factually the failure of defendant to appear. There must be a finding of a failure of the principal to answer or appear upon the calling of his case for trial or other court action, or otherwise to fail to respond to the court. This finding is essential before any default on the undertaking of the surety can be ordered by the court. State v. Barboa, 64 N. M. 5, 322 P.2d 337 (1958).

■ The failure of James to respond, or of United, the bail, to produce him within a reasonable time after notice obviates the need for any ceremonial calling of James's name about the courthouse, as his failure to respond is evidence supporting the court's finding of non-appearance. Here the court so found and directed the clerk to so enter upon the minutes as required by § 41–4–21, N.M.S.A.1953 Comp.

■ The trial court found that the sheriff, in his efforts to execute the commitments, conveyed notice of the writs to the bail. The undertaking of United was to pay the penalty of the bond if the principal, James, did not respond. By statute the bail had power to take and deliver the principal at any time to the sheriff and thus be relieved of its obligation. Section 41–4–20, N.M.S.A.1953 Comp. Had United effected a taking of James and delivered him at any time during the lengthy period when the writs of this court were outstanding and before the forfeiture procedure commenced, its obligation as bail would have been fulfilled.

■ Notice to the bail or surety is equivalent to notice to the principal. The sheriff, acting for this court, undertook to execute our orders of commitment and notified United of them. It was information from United's representative prior to receipt of this court's commitments for execution that gave the sheriff his first knowledge of James's incarceration in Mississippi. A further notice to appear was contained in the orders to show cause, which were issued in the forfeiture proceedings out of which this present cause arose. A copy of those orders and the supporting documents which included this court's writs of commitment were served on United, and were personally served upon James on July 9, 1968. This constituted adequate notice to both the principal, James, and the bail that he was sought by the authorities of this State for execution of his sentence. It then became the bail's

duty to produce the principal. The introductory note to the annotation on the subject of discharge of sureties on bail bonds, appearing in 4 A.L.R.2d 441, gives a concise statement of this rule:

"A prisoner released on bail is regarded as being transferred from the custody of the public officials charged with his confinement to that of the sureties on his bail bond or recognizance. The sureties are then charged with the duty of producing him to answer the charges against him at the proper time and are liable for a failure to do so, unless the failure is excused for reasons which the courts regard as adequate. What reasons are so regarded have varied from time to time and from jurisdiction to jurisdiction, but in general it has been said that a default in appearance will be excused only by an act of God, an act of the law, an act of the obligee, or an act of the public enemy."

The obligation of the surety is derived from the undertaking and from the laws of the state. Section 21-2-1(9) (4), N.M. S.A.1953 Comp. Supreme Court Rule 9, supra, states in referring to appeals in criminal cases:

"* * * Pending such final determination, the defendant shall be entitled to be released on bail by filing a bond, the amount and conditions of which shall be fixed by the district court. The bond shall be sufficient to secure the due execution of the sentence in case the judgment be affirmed * * *."

The transcript of the record is devoid of any orders fixing the conditions of the appeal bonds, and only the amounts were fixed.

The form of bonds employed appears to have been designed for appeal bonds from the justice of the peace courts to the district courts after criminal convictions. It is not a form prescribed by statute. It bears no indication of approval by the court, merely the clerk's filing stamp. The pertinent portion of the bonds reads:

"* * * Now therefore, if the said defendant shall appear at the time provided for a trial of said case in said District Court, and shall remain in attendance upon said court from day to day and from term to term until permanently excused by said court, and shall abide the order of said District Court in said case, then in that event the foregoing obligation shall be null and void, otherwise, to be and remain in full force and effect. * * *"

Construing the law as contained in our Rule 9, supra, together with the language of the bond quoted and considering the purpose of bail bonds generally, it must be held that the obligation of the surety is to suffer the forfeiture if the principal does not, after notice to him or the surety, respond to the judgment and sentence and final commitment of this court. The proposition that the purpose of the law and conditions it requires must be read into any contract of surety has been the subject of other decisions of this court, which, though related to forms of undertaking other than bail bonds, are equally applicable to them. Employment Sec. Comm'n v. C. R. Davis & Peerless Ins. Co., 81 N.M. 23, 462 P.2d 608, filed December 22, 1969 and not yet reported; Monte Rico Mill. & Min. Co. v. United States F. & G., 35 N.M. 616, 5 P.2d 195 (1930), cert. denied 286 U.S. 544, 52 S.Ct. 496, 76 L.Ed. 1281 (1932).

Appellants also urge that the incarceration in federal prison of the principal, James, should be deemed a discharge of bail for the non-appearance or, alternatively, a ground for forbearance or staying the forfeiture. Whether the fact of James's incarceration under the federal conviction or his custody in Mississippi, Arizona and Texas would exonerate the bail has been dealt with in many other jurisdictions. See Annotation 4 A.L.R.2d, supra. The prevailing view as to incarceration, not effected by the same state seeking to forfeit, is stated in 8 C.J.S. Bail § 77, as follows:

"*In another state.* In their internal relations the states of the Union are

foreign to each other, and the act of one cannot operate to defeat an obligation incurred to another; and hence if the performance of a recognizance is rendered impossible by the imprisonment of the principal in another state, it is not such an act of law as will discharge bail. In addition, where a statute provides that a ground for discharge, among others, shall be the impossibility of performance of the bond without fault of the principal, an arrest and imprisonment in another jurisdiction through the fault of the principal will not discharge the bail.

"*By Federal authorities*. According to some authority the arrest and removal of the principal by federal authorities exonerates bail, even though the arrest is for another offense committed after his release on bail; but according to other authority, in order for an arrest by federal authorities to exonerate bail, the arrest must be for the same offense for which accused is held in the state court, or for an offense committed prior to the execution of the bond or recognizance, and, if the principal voluntarily placed himself in a condition which caused his arrest subsequent to the time he executed the bond, he and his sureties cannot be heard to complain."

The Annotation in 4 A.L.R.2d, supra, in commenting on the effect of imprisonment of the principal in other states gives the 8 C.J.S. quotation, supra, as the majority view. It cites no majority view on the effect of federal imprisonment. Some courts exonerate the bail on the theory that action of the United States is an excusable act of the law, while others deny exoneration on the ground that the incarceration was an act of the principal and that the risk falls upon the surety.

Section 41–4–21, N.M.S.A.1953 Comp., reads as follows:

"If, *without sufficient cause*, the defendant neglects to appear for trial or judgment, or upon any other occasion when his presence in court may be lawfully required according to the condition of his recognizance, the court must direct that fact to be entered upon its minutes and the recognizance or money deposited in lieu thereof, as the case may be, is thereupon forfeited." (Emphasis added.)

Section 41–4–22, supra, provides that upon 30 days' notice to the surety it shall appear and show cause why judgment should not be entered against it and "[*i*]*f good cause is not shown* the court may then enter judgment against the sureties on said recognizance, for such sum as it sees fit, not exceeding the full amount thereof." (Emphasis added.)

It is true that the principal, James, was in federal prison when the 1968 proceedings to forfeit the bonds were heard, and was in the U. S. Marshal's custody when served with notice of those proceedings. When the writs were issued and notice given to United James was in jail in Mississippi. However, this does not justify his failure to abide the orders of the court or to respond when sought to allow due execution of the sentence. Corn v. State, 250 Miss. 725, 168 So.2d 304 (1964). During a portion of the time when the writs were outstanding and after notice to United, James was at large. He was then as subject to apprehension and surrender by United as he was to the federal authorities who found him in Arizona. Several of the cases compiled in the Annotation in 4 A.L.R.2d, supra, contained interesting parallels in their facts to this situation. In each no exoneration of bail was granted when the principal, though taken into custody in other jurisdictions, had escaped and was at large when the failure to respond occurred. Wheeler v. State, 38 Tex. 173 (1873); State v. Crosby, 114 Ala. 11, 22 So. 110 (1897); Havis v. State, 62 Ark. 500, 37 S.W. 957 (1896); Vatcher v. Egas, 100 Cal.App. 99, 279 P. 1029 (1929).

The final point urged by appellants is that the trial court should not have imposed judgment for the entire amount on each of the bonds. They propose that some lesser amount would satisfy any loss

or expense occasioned by the state resulting from the failure of James to respond and to begin serving his sentence within a reasonable time following the issuance of the writs of commitment.

Section 41–4–22, supra, states, in part:

" * * * the court may then enter judgment against the sureties on said recognizance, for such sum as it sees fit, not exceeding the full amount thereof. The court may remit or reduce the whole or part of the penalty, and render judgment thereon according to the circumstances of the case and of the situation of the parties, and upon such terms and conditions as seem just and reasonable."

■ That the provision quoted calls for an exercise of discretion by the trial court is obvious. Appellants cite authorities and give cogent argument supporting their contention, which authorities and arguments were also presented to the trial court in support of their request for mitigation. Absent a clear abuse of discretion, this court cannot interpose a different result even should it have a different view of the matter. Edington v. Alba, 74 N.M. 263, 392 P.2d 675 (1964); Rogers v. Lyle Adjustment Co., 70 N.M. 209, 372 P.2d 797 (1962).

■ Appellants argue that the following portion of § 41–4–22, supra, requires mitigation:

"When a judgment has been rendered against the defendant or surety for the whole or part of the penalty of a forfeited recognizance, the court rendering such judgment may in his discretion remit or reduce the amount thereof when after such rendition the accused has been arrested and surrendered to proper court to be tried on such charge or to answer the judgment of said court."

Because James was not amenable to New Mexico authorities at the time that the trial court exercised its discretion, this portion of the statute was not applicable.

Section 41–4–24, N.M.S.A.1953 Comp., states:

"All actions upon recognizance bonds shall be prosecuted to final judgment and collection unless the court, in his discretion, shall order otherwise."

■ Reading the two last quoted provisions together, it appears that once judgment of forfeiture is entered and the amount fixed, the court has no occasion to mitigate the amount of the judgment it has previously entered, unless the principal is " * * * surrendered to proper court to be tried on such charges, or to answer the judgment of said court."

The judgment is affirmed with the cause remanded to the trial court for execution of the judgment, or in the event of James's surrender to answer the outstanding writs of commitment of this court before execution on the judgment, for such further action as may be deemed appropriate under the cited statutes.

It is so ordered.

WATSON and SISK, JJ., concur.