2004-NMCA-118

143 P.3d 496

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Erasmo VALLES, Defendant,**

and

**Linda Rice, B & B Bailbonds,**
**Surety–Appellant.**

**No. 23,643.***

Court of Appeals of New Mexico.

Aug. 19, 2004.

* Editor's Note: On March 29, 2006, the Supreme Court entered an order rescinding the May 15, 2005 order of the Supreme Court withdrawing *State v. Valles,* Court of Appeals No. 23,643, previously published in 136 N.M. 429, 99 P.3d 679. *State v. Valles* has been released for publication as 2004–NMCA–118, the original 2004 official citation.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

Jon C. Fredlund, James W. Klipstine, Jr., LLC, Hobbs, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} The bail bond form which the Supreme Court requires sureties to sign when posting bail for a criminal defendant and a statute conflict on when the surety's obligation under the bond terminates. The form states that the obligation under the bond is continuing

and is in full force and effect until discharged and exonerated by the court. The statute states that the obligations under the bond are null and void upon a finding that the accused is guilty. The district court ruled that the form governs and rendered a forfeiture judgment against Defendant's surety, Linda Rice, B & B Bailbonds (Surety), obligating it to pay the full amount of the bond to the court. We hold that the statute governs and Surety's obligations under the bond ceased when Defendant pled guilty. We therefore reverse.

## FACTS AND PROCEDURAL HISTORY

{2} A criminal complaint was filed in the Lea County Magistrate Court charging Defendant with five counts of trafficking cocaine, and a warrant was issued for his arrest. The warrant required a $20,000 cash bond. After his arrest, Defendant was brought before the magistrate and an amended release order and bond was filed allowing Defendant to secure his release by posting a secured bond of $20,000 with a "bail bond executed on Form 9–304." Defendant and his Surety then executed a bail bond in the sum of $20,000, and he was released. The bail bond is on Form 9–304, prescribed by the Supreme Court in Rule 9–304 NMRA 2004. In pertinent part, this bail bond form requires Defendant to appear as required in accordance with any and all orders and directions which may be given or issued by the magistrate court or in any other district or appellate court to which the cause may be transferred. The bail bond form then provides:

> IT IS AGREED AND UNDERSTOOD THAT THIS IS A CONTINUING BOND WHICH SHALL CONTINUE IN FULL FORCE AND EFFECT UNTIL SUCH TIME AS THE BOND IS DULY EXONERATED AND DISCHARGED BY THE COURT. THE BOND GUARANTEES THE APPEARANCE OF THE DEFENDANT.

{3} Use of the form is required by the Supreme Court rules. Rule 6–401 NMRA 2004 of the Rules of Criminal Procedure for the Magistrate Courts governs bail. Subsection (A) of the rule concludes by stating: "Any bail, property or appearance bond shall be substantially in the form approved by the supreme court." Rule 6–401(A). Subsection (L) of the same rule is entitled "[f]orms" and it directs: "Instruments required by this rule shall be substantially in the form approved by the supreme court." Rule 6–401(L).

{4} Defendant waived his right to a preliminary hearing in the magistrate court, and he was bound over to the district court on the offenses charged in the complaint.

{5} Rule 5–401(L) NMRA 2004 of the Rules of Criminal Procedure for the District Courts provides that the bond is "transferred to the district court upon . . . bind over to that court." Ultimately, a plea and disposition agreement between the State and Defendant was approved by the district court, and Defendant pled guilty to two counts of trafficking cocaine. However, Defendant subsequently failed to appear for sentencing and a bench warrant was issued for his arrest.

{6} A declaration of forfeiture of bail bond and notice of forfeiture and order to show cause was then served on Surety. *See* NMSA 1978, § 31-3-2 (1993) (stating when a defendant fails to appear at the time and place fixed by the terms of his bail bond, the court may declare a forfeiture of the bail, and after serving notice to the surety to appear and show cause why judgment should not be entered, if good cause is not shown, the court may enter judgment against the surety for the full amount of the bail bond).

{7} Surety argued that its obligations under the bond automatically terminated pursuant to NMSA 1978, § 31-3-10 (1987) when Defendant pled guilty, and the bond could not therefore be forfeited. The statute is entitled, "[t]ermination of liability," and states: "All recognizances secured by the execution of a bail bond shall be null and void upon the finding that the accused person is guilty, and all bond liability shall thereupon terminate." *Id.* The State argued that the terms of the bond, as required by the Supreme Court form, applied, and that forfeiture of the bond was appropriate. The district court found that the bond, by its language, was continuing, and a forfeiture judgment was filed against Surety to pay the full

amount of the bond to the court. Surety appeals.

## ANALYSIS

{8} The resolution of this case involves the interpretation and application of a statute and court rules, questions of law reviewed de novo on appeal. *In re Daniel H.*, 2003-NMCA-063, ¶ 8, 133 N.M. 630, 68 P.3d 176.

■ {9} The bail bond and Section 31-3-10 are inconsistent with one another. The bail bond states, as required by the Supreme Court form, that it "is a continuing bond which shall continue in full force and effect until such time as the bond is duly exonerated and discharged by the court." Form 9-304. Defendant's bond was not expressly "exonerated and discharged by the court." Therefore, when Defendant failed to appear for sentencing, a forfeiture occurred under the terms of the bond. On the other hand, the statute states that the bond automatically terminates "upon the finding that the accused person is guilty." Section 31-3-10. Therefore, when Defendant pled guilty, and the plea was accepted by the court, the bond automatically terminated under the statute. *See State v. Mondragon*, 107 N.M. 421, 424, 759 P.2d 1003, 1006 (Ct.App.1988) (stating ordinary meaning of "conviction" is the finding of guilt, before formal adjudication by the court, and sentencing). We must determine whether the form or statute governs.

■ {10} Generally speaking, a bail bond is a type of bond to obtain the release of a person from imprisonment and to secure his appearance before the court. *See* Restatement of Security § 203 (1941). The release of a defendant on a bail bond serves important interests. It gives effect to the presumption of innocence by not subjecting an accused to imprisonment until his guilt is proven beyond a reasonable doubt, and it advances the sound administration of justice because the surety insures the defendant's presence before the court in accordance with its orders and directives. *See State v. Amador*, 98 N.M. 270, 273, 648 P.2d 309, 312 (1982). When a bondsman posts bond for a defendant, he enters into a contract with the state under which he guarantees that the defendant will appear as directed by the court. *Id.* at 271, 648 P.2d at 311; *see State v. Ericksons*, 106 N.M. 567, 568, 746 P.2d 1099, 1100 (1987). As such, the extent of the undertaking depends on the wording of the bond agreement, subject to the rules of construction that are generally applicable to contracts. *See generally* 8A Am.Jur.2d *Bail and Recognizance* § 52 (1997). If the defendant does not appear at the proper time and place as required by the bond, the surety becomes the absolute debtor of the state for the amount of the bond. *Id.* § 51; *State v. United Bonding Ins. Co.*, 81 N.M. 154, 157, 464 P.2d 884, 887 (1970); *see also* § 31-3-2(E) (providing if good cause not shown, court may enter judgment against obligor "for such sum as it sees fit, not exceeding the penalty fixed by the bail bond").

■ {11} In New Mexico when a bond is issued pursuant to statutory authority, the statutory requirements are deemed to be incorporated into the bond. In *United Bonding*, the Supreme Court added statutory undertakings to those specifically stated in the bond. "The obligation of the surety is derived from the undertaking and from the laws of the state." 81 N.M. at 157, 464 P.2d at 887. A form of bond designed for appeals from the justice of the peace court to the district court was used to continue the defendant's release while he appealed his felony conviction to the Supreme Court. The language of the bond only obligated the surety to produce the defendant for trial in the district court, and the defendant did not surrender after his conviction was affirmed by the Supreme Court. The Supreme Court held that the legal obligation to appear and comply with the judgment and sentence if the judgment was affirmed would be read into the bond. "The proposition that the purpose of the law and conditions it requires must be read into any contract of surety has been the subject of other decisions of this court, which, though related to forms of undertaking other than bail bonds, are equally applicable to them." *Id.* In *Monte Rico Milling & Mining Co. v. United States Fidelity & Guaranty Co.*, 35 N.M. 616, 5 P.2d 195 (1930), the Court adopted the following rule of construction applicable to statutory bonds, quoting from 9 C.J. 34, § 56:

The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much as part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bonds, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it. Although the terms of the bond may bear a broader construction, the liability of the parties will be confined to the measure of liability as contemplated by the law requiring the bond; but it will not be assumed that the legislative enactment was intended to import to an instrument an effect different from that intended by the parties. *Id.* at 625–26, 5 P.2d at 200 (internal quotation marks omitted); *see also Employment Sec. Comm'n v. C.R. Davis Contracting Co.,* 81 N.M. 23, 25, 462 P.2d 608, 610 (1969) (stating general rule is that liability of surety cannot be extended beyond undertaking stated in the bond except where bond is given for a "public or quasi public purpose;" or "when by special provision of statute the conditions and obligations prescribed in the statute requiring the bond must be read into the bond, whether contained therein or not").

{12} Application of the foregoing principle alone would cause Section 31–3–10 to be read into the bail bond. Other states have done so. *See Rodriquez v. People,* 191 Colo. 540, 554 P.2d 291, 293 (1976) (en banc) (stating statutes relating to bail "implicitly constitute a part of the surety contract"); *State v. Abracadabra Bail Bonds,* 131 Idaho 113, 952 P.2d 1249, 1252 (Ct.App.1998) (stating existing law becomes part of surety's contract); *State v. Wills,* 672 So.2d 405, 407 (La.Ct.App.1996) (holding provision in bail bond continuing obligation after conviction a nullity when it contradicted a statute which required surety's written approval to continue the obligation after conviction and imposition of sentence); *State v. Hurley,* 201 Neb. 569, 270 N.W.2d 915, 917 (1978) (stating that the well-established rule that law affecting the contract is read into and becomes part of the contract is applicable to appearance bonds). If statutory elements can be read into a bond to increase the obligations expressly stated, statutory elements can also be read into a bond to reduce the obligations expressly stated. *Wills,* 672 So.2d at 407. This is particularly true in New Mexico where it is the public policy to encourage bondsmen to enter into bail contracts and a strict application of forfeiture discourages bondsmen from giving bail. *See Amador,* 98 N.M. at 273–74, 648 P.2d at 312–13 (stating it is desirable that bondsmen be encouraged to enter bail contracts to promote the purpose of bail, and that strict application of bail forfeiture statutes discourages bondsmen from giving bail).

{13} Reading Section 31–3–10 into the bail bond is reasonable when we examine the rule on conditions of release pending sentencing. In pertinent part, it states: "A person released pending or during trial *may* continue on release pending the imposition of sentence under the same terms and conditions as previously imposed, unless the surety has been released or the court has determined that other terms and conditions or termination of release are necessary." Rule 5–402(B) (emphasis added). By its terms, the rule recognizes that a surety may be released upon a finding of guilt. Further, a defendant is not automatically entitled to release under the same terms and conditions that were previously imposed pending or during trial after he has been adjudicated guilty but not yet sentenced. This is because the risk he will not appear has materially increased with the determination that he is guilty. *See State v. Vendrell,* 197 N.J.Super. 232, 484 A.2d 720, 722 (Ct.App.Div.1984); *see also Rodriquez,* 554 P.2d at 292 ("Events which materially increase [the calculated] risk have the effect of terminating the obligation."). "An in-

crease in the amount of the bond after conviction is within the discretion of the trial court." *State v. Cebada,* 84 N.M. 306, 308, 502 P.2d 409, 411 (Ct.App.1972). Section 31–3–10 gives recognition to these realities by providing that the surety's obligations automatically terminate when a defendant is found guilty. The district court must re-evaluate whether a defendant should continue to be released, and if so, under what conditions. Depending on the court's ruling, the surety can make an express agreement to continue with its obligations notwithstanding the increased risk or enter into a new surety agreement.

{14} Finally, the foregoing analysis convinces us that Section 31–3–10 describes a substantive right. The argument in the district court was whether a procedural right or substantive right is involved. The Supreme Court is vested with the exclusive power to regulate pleading, practice, and procedure in the courts under N.M. Const. art. III, § 1 and art. VI, § 3. *See Ammerman v. Hubbard Broad., Inc.,* 89 N.M. 307, 311, 551 P.2d 1354, 1358 (1976). Thus, when a statute conflicts with a Supreme Court rule on a matter of procedure, the Supreme Court rule prevails, and the statute is not binding. *Id.; see also Maples v. State,* 110 N.M. 34, 36, 791 P.2d 788, 790 (1990) (stating " 'the law is clear that on procedural matters . . ., a rule adopted by the Supreme Court governs over an inconsistent statute' "). On the other hand, if the conflict involves a question of substantive law, the statute prevails, and the Supreme Court rule is not binding. *See State ex rel. Gesswein v. Galvan,* 100 N.M. 769, 772, 676 P.2d 1334, 1337 (1984). Generally, a substantive law creates, defines, or regulates rights while procedural law outlines the means for enforcing those rights. *Id.* at 770, 676 P.2d at 1335. It is not within our power to invalidate substantive policy choices made by the Legislature. *Eturriaga v. Valdez,* 109 N.M. 205, 209, 784 P.2d 24, 28 (1989). In *State v. House,* 1996–NMCA–052, ¶ 6, 121 N.M. 784, 918 P.2d 370, we stated that a statute denying a right to bail pending appeal for those convicted of certain offenses and granting a limited and conditional right to bail for those convicted of other offenses was substantive in nature. We also conclude

here that Section 31–3–10 describes a substantive right of a surety. *See Miller v. State,* 262 Ark. 223, 555 S.W.2d 563, 564–65 (1977) (en banc) (stating that substantive law "creates, defines, and regulates rights" and "if there is any conflict between the statute and the bond, the language of the statute is controlling"); *State v. Braun,* 100 Wis.2d 77, 301 N.W.2d 180, 183–84 (1981) (holding that statute governed over inconsistent terms of bail bond). The attorney general has also concluded that a statute apparently contradicting a Supreme Court rule concerning bail bonds controls because a substantive right of the surety is at stake. N.M. Att'y Gen. Op. 89–12 (1989). We therefore hold that Section 31–3–10 prescribes a substantive right of Surety, and it governs over the inconsistent terms of the form prescribed by the Supreme Court.

{15} We note in closing that this appears to be a case in which an amendment to the bail statutes was enacted, but subsequent changes to the forms were not consistent with the revised statutes. The bail bond statutes enacted in 1972 contained a provision that a "paid surety" was "a surety that has taken money, property or other consideration to act as a surety for the accused," and could be "released from the obligation of its bond only by an order of the court," but that a court "shall order the discharge of a paid surety if [ ] the contractual agreement between the surety, the principal and the state has terminated." NMSA 1978, § 31–3–4(A), (D), (E)(4) (1972). Beginning in 1972, the forms adopted by the Supreme Court had language to the effect that the bond was continuing and in full force and effect until the surety was "duly exonerated" or "duly exonerated and discharged by the court." *See* "Bail Bond" in Criminal Forms (1972); Bail Bond Criminal Form 3.25 (1978); Bail Bond Criminal Form 9–304 (1986); Bail Bond Criminal Form 9–304 (1990); Bail Bond Criminal Form 9–304 (1991); Bail Bond Criminal Form 9–304 (1995). Form 9–304, in the form required by Rule 9–304 was amended and effective as of May 15, 1991. It contains the language, consistent with the 1972 statute that the bond is continuing and "in full force and effect until such time as the

464

bond is duly exonerated and discharged by the court." *Id.* Section 31–3–10 was added to the bail bond statutes in 1987, directing that "[a]ll recognizances secured by the execution of a bail bond shall be null and void upon the finding that the accused person is guilty" and that "all bond liability shall thereupon terminate." *Id.* By giving effect to the 1987 statute, we are following the principle of statutory construction that "[a] later statute, as the most recent expression of legislative intent, will control over an earlier statute to the extent of any inconsistency." *State v. Vigil,* 103 N.M. 581, 582, 711 P.2d 26, 28 (Ct.App. 1985), quoting *Abbott v. Armijo,* 100 N.M. 190, 191, 668 P.2d 306, 307 (1983). With the 1987 enactment of Section 31–3–10, the Legislature established that the contractual agreement between Surety, the principal and the State was "terminated" when Defendant was found guilty, and the court is therefore required to order the discharge of Surety under Section 31–3–4(E)(4).

■ {16} The State asks us to construe the bond against Surety and hold that its obligations remained intact notwithstanding Section 31–3–10. We decline to do so because Surety had no opportunity to bargain for the provisions contained in the contract. *See Ericksons,* 106 N.M. at 568, 746 P.2d at 1100 ("[T]he terms of the bail contract are to be construed strictly in favor of the surety."). We therefore hold that Surety was released from its obligations under Section 31–3–10 when Defendant was found guilty by his plea.

**CONCLUSION**

{17} The judgment of the district court is reversed.

{18} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CYNTHIA A. FRY, Judges.