This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                  **NO. 28,146**

**MANUEL RODRIGUEZ-RIVERA,**

Defendant,

and

**A-AFFORDABLE BAIL BONDS, LLC,**

Surety-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Mel B. O'Reilly
Mel B. O'Reilly
Albuquerque, NM

for Surety-Appellant



**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Surety A-Affordable Bail Bonds (A-Affordable) appeals from the district court's judgment entering forfeiture of a bond it posted on behalf of Defendant Manuel Rodriguez-Rivera. Defendant failed to appear after he was taken into the custody of Immigration and Customs Enforcement (ICE) and deported. The district court denied relief from forfeiture on the basis that it was reasonably foreseeable to A-Affordable that Defendant would be deported on posting bond. We hold that because the State never released Defendant on the bond and instead surrendered him to federal agents to be deported, the district court abused its discretion in ordering forfeiture of the bond. We therefore reverse.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Defendant is a Mexican national. On July 12, 2006, Defendant was arrested and charged with two counts of trafficking heroin by distribution and one count of tampering with evidence. When he was booked into the Bernalillo County Detention Center, Defendant listed his place of birth as Mexico and gave an address in Nayarit, Mexico. At Defendant's arraignment, the district court set bond in the amount of $10,000 cash or surety and imposed standard conditions of release. On September 14, 2006, A-Affordable posted bond on Defendant's behalf. The bonding paperwork

2

revealed A-Affordable's address and telephone number as Defendant's address and phone number.

The State did not release Defendant from custody on posting of the bond. Instead, the State transferred Defendant from the Regional Correctional Facility to the Metropolitan Detention Center (MDC). On September 15, 2006, MDC officials surrendered Defendant to the custody of ICE agents. Defendant was subsequently deported to Mexico. At that time, the State apparently did not inform A-Affordable that Defendant had not been released on the bond and had been handed over to ICE agents.

On January 17, 2007, Defendant failed to appear at a hearing on the State's motion to review conditions of release. The district court issued a bench warrant and declared the $10,000 bond forfeited, and issued an order to show cause to A-Affordable why judgment of forfeiture should not be entered. Between February and August 2007, A-Affordable appeared before the district court multiple times seeking extensions of time to produce Defendant, asserting that it was making good faith attempts to locate him. During this time, both the prosecutor and A-Affordable were apparently unaware that Defendant had been surrendered to ICE agents upon posting bond and subsequently deported.

3

On August 10, 2007, A-Affordable appeared and informed the district court that it had information that Defendant had been deported. On September 25, 2007, A-Affordable filed a motion to exonerate the bond. The district court denied the motion and entered judgment of forfeiture. A-Affordable then filed a motion for reconsideration. At the hearing on the motion for reconsideration, A-Affordable argued that, because Defendant was deported by federal authorities prior to the time of trial, it should be relieved from its obligations under the bond under NMSA 1978, Section 31-3-4(E)(3) (1972) (stating that the district court shall discharge a surety from its obligations under the bond where "circumstances have arisen which the surety could not have foreseen at the time it became a paid surety for the accused"). The district court denied the motion. In its written findings, the court determined that under the circumstances, it was reasonably foreseeable to A-Affordable that Defendant would be removed from the country upon posting of the bond. A-Affordable appeals.

**II.    ANALYSIS**

When a defendant fails to appear, the district court has discretion to order forfeiture of a bail bond pursuant to NMSA 1978, Section 31-3-2(B)(2) (1993). *See* § 31-3-2(B)(2) (stating that the district court "may declare a forfeiture of the bail" on a defendant's failure to appear); § 31-3-2(C) (providing that the district court may set

4

aside forfeiture "if it appears that justice does not require the enforcement of the forfeiture"); § 31-3-2(E) (providing that at the hearing on the order to show cause why judgment should not be entered on the forfeiture, "[i]f good cause is not shown, the court may then enter judgment against the [bondsmen] for such sum as it sees fit, not exceeding the penalty fixed by the bail bond or recognizance"); *see also State v. Pacheco*, 2008-NMCA-055, ¶ 25, 143 N.M. 851, 182 P.3d 834 (noting that "the district court has discretion, but is not required, to declare . . . forfeiture" of a bail bond when the defendant fails to appear).

We review the district court's decision to forfeit a bond for abuse of discretion. *See id.* "A trial court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances, or when the ruling is contrary to the reasonable, probable, and actual deductions that may be drawn from the facts and circumstances." *State v. Soto*, 2007-NMCA-077, ¶ 10, 142 N.M. 32, 162 P.3d 187 (internal quotation marks and citation omitted). In considering whether a district court abuses its discretion in ordering forfeiture of a bail bond or in denying a motion to set aside forfeiture, we consider the nature and purpose of a bail bond as well as the actions of the surety in the present case. *See Pacheco*, 2008-NMCA-055, ¶ 26; *State v. Amador*, 98 N.M. 270, 273, 648 P.2d 309, 312 (1982).

A bail bond is a type of contract in which the State agrees to release the defendant from custody and the surety guarantees the defendant's appearance before the court. *See State v. Valles*, 2004-NMCA-118, ¶ 10, 140 N.M. 458, 143 P.3d 496 ("When a bondsman posts bond for a defendant, he enters into a contract with the state under which he guarantees that the defendant will appear as directed by the court."); *see also State v. Ericksons*, 106 N.M. 567, 567-68, 746 P.2d 1099, 1099-100 (1987) (stating that a bail bond is a type of contract between the state on the one hand and the principal and his surety on the other and is subject to the rules of contract law); *Amador*, 98 N.M. at 271, 648 P.2d at 310.

"The release of a defendant on a bail bond serves important interests. It gives effect to the presumption of innocence by not subjecting an accused to imprisonment until his guilt is prove[d] beyond a reasonable doubt, and it advances the sound administration of justice because the surety insures the defendant's presence before the court in accordance with its orders and directives." *Valles*, 2004-NMCA-118, ¶ 10. The purpose of a bail bond is to obtain the defendant's release from imprisonment and to secure his appearance before the court. *Id.* "Bail is not a source of revenue for the [S]tate." *Amador*, 98 N.M. at 273, 648 P.2d at 312. New Mexico recognizes a public policy to encourage bondsmen to enter into bail contracts. *See id.* ("In order to promote the purpose of bail, it is desirable that bondsmen be encouraged

to enter into bail contracts."); *Valles*, 2004-NMCA-118, ¶ 12 (stating that it is public policy to encourage bail contracts and strict application of bond forfeiture statutes discourages bondsmen from entering into bail contracts).

Applying these principles to the circumstances of this case, we believe that the district court abused its discretion in ordering forfeiture of the bond. The key fact is that the State never released Defendant on the bond and instead surrendered him to federal ICE agents for deportation. In *Amador*, the Supreme Court held that the district court abused its discretion in ordering forfeiture of the bond where the defendant was incarcerated in Texas when he failed to appear at trial. 98 N.M. at 273-74, 648 P.2d at 312-13. The Court held that justice did not require forfeiture of the entire amount of the bond, noting that the bondsman had not connived with the defendant to avoid justice, the bondsman made appropriate efforts to recover the defendant, and the State was not unduly prejudiced by the defendant's failure to appear. *Id*. at 274, 648 P.2d at 313. The Court stated that "it is unjust to enrich the state treasury when a bondsman has been diligent in his efforts to apprehend and bring back for trial a defendant but has been thwarted by the actions of another sovereign jurisdiction." *Id*.

The same reasoning applies here where the State never released Defendant on the bond and instead transferred him to federal authorities for deportation. When the

State transferred Defendant to federal authorities, it thwarted A-Affordable's ability to ensure Defendant's appearance before the court. Additionally, Defendant was never at large before he was deported. *Cf. State v. United Bonding Ins. Co.*, 81 N.M. 154, 158, 464 P.2d 884, 888 (1970) (holding that the district court did not abuse its discretion in denying relief from forfeiture on the basis of the principal's incarceration in a foreign jurisdiction where the defendant had escaped and was at large and subject to apprehension by the bondsman for a portion of the relevant time). Finally, any prejudice suffered by the State occasioned by Defendant's failure to appear was minimal and of the State's own making. We note that Defendant failed to appear at a hearing on the State's motion to review conditions of release. As the State never in fact released Defendant, we do not believe that the State has suffered undue prejudice from Defendant's absence at that hearing. *See Amador*, 98 N.M. at 274, 648 P.2d at 313 (considering whether the State suffers undue prejudice from a defendant's failure to appear in reviewing the district court's order forfeiting bond). The State attempts to distinguish *Amador*, arguing that in cases involving defendants who are present in this country without authorization, there is a known risk of deportation that does not exist with citizens. The State argues that, if A-Affordable knew or should have known that Defendant was deportable when it wrote the bond, then forfeiture of the bond is warranted. The State relies on *Castaneda v. State*, 55 S.W.3d 729, 732

8

(Tex. App. 2001), *aff'd in part and rev'd in part*, 138 S.W.3d 304 (Tex. Crim. App. 2003) (en banc), in which the court denied relief from bond forfeiture on the basis that the bondsman voluntarily assumed the risk that the principals would be deported. *But see In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 205 (Tenn. Crim. App. 2002) ("The surety does not assume the risk that the State will encourage the deportation of a defendant or otherwise refuse to cooperate in a defendant's or surety's efforts to stay deportation proceedings pending trial."). On this point, the district court found that it was reasonably foreseeable to A-Affordable that Defendant would be deported on posting of the bond stating "when a [c]riminal [d]efendant is a foreign national and is arrested for certain enumerated offenses they are subject to removal . . . by agencies of the [f]ederal [g]overnment and are returned to their countries of origin."

We first disagree that A-Affordable could have known that Defendant was subject to deportation based on his status as a foreign national and his pending charges for trafficking heroin and evidence tampering. Under federal law, "[a]ny alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed" if the alien is within a statutorily defined class of deportable aliens. 8 U.S.C. § 1227(a) (2008). One class of deportable aliens includes those who are *convicted* of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added).

Trafficking heroin is an "aggravated felony"as that term is used in § 1227. *See* 8 U.S.C. § 1101(a)(43)(B) (2009) (listing "illicit trafficking in a controlled substance" as within the definition of "aggravated felony"); *see also* § 1227(a)(2)(A)(i)(II) (providing that aliens convicted of offenses for which a sentence of a year or longer may be imposed are deportable); § 1227(a)(2)(B)(i) (providing that aliens who are convicted of violating a state law relating to controlled substances are deportable). However, an arrest for illicit trafficking in a controlled substance does not render an alien immediately deportable under § 1227(a).

Additionally, we find nothing in the record or the district court's factual findings to indicate that A-Affordable should have known that Defendant was present in this country illegally and thus deportable as the State argues. *See* § 1227(a)(1)(B) (designating aliens present in violation of the law as deportable aliens). The record indicates that Defendant was born in Mexico and that he listed an address in Mexico when he was booked. However, the record does not disclose Defendant's immigration status. We do not believe that this is sufficient to alert a bondsman that a defendant is present in the country without authorization.

We do not think it is necessary to engage in any analysis in this case as to whether the bondsman should have foreseen that Defendant might have been deported at some point in time. Under the particular circumstances in this case, we do not think

that A-Affordable should be penalized for Defendant's failure to appear. In this case the record does not indicate that A-Affordable should have foreseen that the State would not only have failed to release Defendant but also would have actively aided in Defendant's deportation by choosing almost immediately to transfer custody to federal authorities. *See In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d at 205 (stating that a surety does not assume the risk that the State will encourage a defendant's deportation). The State interfered with A-Affordable's ability to ensure Defendant's appearance when it transferred Defendant to ICE for deportation. It cannot now benefit from Defendant's failure to appear. *See Amador*, 98 N.M. at 274, 648 P.2d at 313 (stating that it is unjust to enrich the state treasury through a bond forfeiture when a bondsman has been diligent in efforts to secure the defendant's appearance but has been thwarted by the actions of a sovereign jurisdiction); *see also Nat'l Old Line Ins. Co. v. Brown*, 107 N.M. 482, 487, 760 P.2d 775, 780 (1988) (stating that a party to a contract, who prevents performance by the adverse party, cannot rely on such condition to defeat his liability, and the nonperforming party is to be treated as if he had performed his obligations under the contract).

**III. CONCLUSION**

For these reasons, we hold that justice does not require forfeiture of the bond, and the district court abused its discretion in ordering forfeiture. We therefore reverse and remand this case to the district court.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**