314 P.3d 820

**STATE of Arizona, Appellee,**

v.

**LIBERTY BAIL BONDS and Banker's Insurance Company, as Real Parties in Interest for Defendant Miguel Fernando Peña, Appellants,**

**and**

**Ameri–Bail Bonds and Lexington National Insurance Company, as Real Parties in Interest for Defendant Scott Alan Sokol, Appellants.**

**No. 1 CA–CV 12–0213.**

Court of Appeals of Arizona, Division 1.

Dec. 5, 2013.

Maricopa County Attorney's Office, By Kimberly Felcyn, Phoenix, Counsel for Appellee.

Clifford M. Sherr, Attorney at Law, By Clifford M. Sherr, Phoenix, Counsel for Appellants.

JOHNSEN, Chief Judge.

¶ 1 By law, an appearance bond may be forfeited if a criminal defendant fails to appear in court when required. Arizona Rule of Criminal Procedure 7.2(c)(1) provides that when a defendant enters a guilty plea that "will in all reasonable probability" result in incarceration, the superior court may not release the defendant, but must keep or take him into custody immediately. This consolidated appeal arises from bond forfeitures ordered after two defendants who were released after entering guilty pleas that mandated incarceration failed to return to court. On appeal, the bondsmen argue their bonds should have been exonerated because pursuant to Rule 7.2(c)(1), the court should not have released the defendants after accepting their pleas. We hold the superior court had discretion to accept the parties' stipulated waiver of Rule 7.2(c)(1) and, for that reason, affirm the forfeitures.[1]

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 Ameri–Bail Bonds and Lexington National Insurance Company posted a $12,000 appearance bond securing the release of Scott Alan Sokol, who was charged with

---

1. In a separate memorandum decision, we address another issue arising out of the forfeiture orders. See ARCAP 28(g).

armed robbery, a Class 2 dangerous felony.[2] A release order required Sokol, among other things, to "[a]ppear to answer and submit to all further orders of the court."

¶ 3 Sokol pled guilty to two felonies pursuant to a plea agreement mandating incarceration of up to six years. The superior court accepted Sokol's guilty plea but did not order him taken into custody as required by Rule 7.2(c)(1). Instead, the court released him pending sentencing two months later, noting in its minute entry that "[t]he parties[ ] agreed not to invoke Rule 7.2." There is no indication in the record that the bondsmen were sent a copy of the minute entry that reported the court's acceptance of Sokol's plea and subsequent release. After Sokol failed to appear for a status conference shortly after the plea proceeding, the court issued a bench warrant for his arrest and, pursuant to Arizona Rule of Criminal Procedure 7.6(c), scheduled a bond forfeiture hearing.

¶ 4 In the other case, Liberty Bail Bonds and Banker's Insurance Company posted a $25,000 appearance bond securing the release of Miguel Fernando Peña, who was charged with sale or transportation of marijuana, a Class 2 felony, and money laundering, a Class 3 felony. Like Sokol's, Peña's release order required him, among other things, to "[a]ppear to answer and submit to all further orders and processes of the court having jurisdiction."

¶ 5 Peña pled guilty to the charged offenses; his plea agreement mandated a term of incarceration. The superior court accepted the plea but released Peña pending a status conference set for five months later, noting in the minute entry that "[o]n stipulation of counsel, ... the defendant will not be remanded at this time." The minute entry the court issued was not endorsed to the bondsmen. After Peña, like Sokol, failed to appear for his sentencing, the court issued a bench warrant for his arrest and scheduled a bond forfeiture hearing.

¶ 6 The superior court consolidated the forfeiture hearings and entered a judgment forfeiting both bonds. The court found no reasonable cause existed for the defendants' failures to appear. The court noted on the record that it had conferred with the judges who had released Sokol and Peña after taking their pleas. The forfeiture judgment recites that "based upon those discussions," the court "took judicial notice that in criminal divisions of the Maricopa County Superior Court the judges interpreted Arizona Rules of Criminal Procedure, Rule 17.4(a) as permitting them the 'flexibility' to lawfully allow a Defendant, who would otherwise be subject to incarceration pursuant to Arizona Rule of Criminal Procedure, Rule 7.2(c)(1) to be released pending sentencing."

¶ 7 We have jurisdiction of the bondsmen's timely appeals pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes § 12–2101(A)(1) (2013).[3]

## DISCUSSION

¶ 8 We review a superior court's order forfeiting an appearance bond for an abuse of discretion, but we interpret court rules governing appearance bonds *de novo*. *State v. Garcia Bail Bonds*, 201 Ariz. 203, 205, ¶ 5, 33 P.3d 537, 539 (App.2001).

¶ 9 A secured appearance bond is "an undertaking, on a form approved by the Supreme Court, to pay to the clerk of the court a specified sum of money upon failure of a person released to comply with its conditions." Ariz. R.Crim. P. 7.1(b)-(c). Its primary purpose is to secure a defendant's appearance at trial or other proceedings. *Garcia Bail Bonds*, 201 Ariz. at 208, ¶ 19, 33 P.3d at 542. Statutes and criminal procedure rules relating to bonds are incorporated by law into a bail bond obligation. *See State v. Surety Ins. Co.*, 123 Ariz. 568, 569–70, 601 P.2d 331, 332–33 (App.1979); *see also State v. Valles*, 140 N.M. 458, 143 P.3d

---

**2.** We consider the evidence "in the light most favorable to support the judgment of the trial court." *State v. Garcia Bail Bonds*, 201 Ariz. 203, 205, ¶ 5, 33 P.3d 537, 539 (App.2001).

**3.** Absent material revision after the relevant date, we cite a statute's current version.

496, 499–500 (N.M.App.2004) (collecting cases).[4]

¶ 10 Rule 7.2(c)(1) provides that, with exceptions not relevant here, "[a]fter a person has been convicted of any offense for which the person will in all reasonable probability suffer a sentence of imprisonment, the person shall not be released on bail." The bondsmen argue that, pursuant to Rule 7.2(c)(1), once Sokol and Peña pled guilty to crimes that would require a prison term, the superior court could not release them, but was required to remand them for incarceration and exonerate the bonds. *See* Ariz. R.Crim. P. 7.6(d)(1) (court "shall exonerate the appearance bond" if it determines "before violation that ... there is no further need for an appearance bond").

¶ 11 The principle underlying the bondsmen's argument is grounded in basic suretyship law. In this context, the bond is a contract, with the bondsman being the surety, the defendant whose appearance the bondsman guarantees being the principal, and the state, the creditor. As the bond for Peña's appearance stated, "We, Liberty Bail Bonds ... and Bankers Insurance Company ... hereby undertake that the Defendant will appear and answer charges above mentioned in the Court in which it may be prosecuted, or if he fails to appear that he will pay to the STATE OF ARIZONA the amount entered above...." *See, e.g., State v. Vaughn,* 11 P.3d 211, 214, ¶ 10 (Okla.2000) ("By the written undertaking, the bondsman (surety) agrees to insure the appearance of the defendant (principal) before the court

and, in the event the defendant fails to appear, to pay to the court (creditor) the amount of money specified in the order fixing bail."); *see also State v. Veatch,* 132 Ariz. 394, 397, 646 P.2d 279, 282 (1982) (referring to language "of a bail-bond contract"); *State ex rel. Ronan v. Superior Court,* 96 Ariz. 229, 231, 393 P.2d 919, 920 (1964) (bail forfeiture claim is a substitute "for civil suit by the state ... resulting from a breach of contract"); *State v. Stanton,* 59 Ariz. 55, 59, 122 P.2d 855, 856 (1942) (interpretation of bond is "a question of contract as to what the parties have themselves agreed upon in the bonds in question"); *In re Bond in Amount of $75,000,* 225 Ariz. 401, 405, ¶ 7, 238 P.3d 1275, 1279 (App.2010) ("bail bond ... is considered a contract between the suret[y] and the state"; citation omitted); Restatement (First) of the Law of Security § 203 cmt. c (1941) ("The surety's obligation on a bail bond as on any other surety contract is limited to the surety's promise....").

¶ 12 When a principal and creditor modify their contract without the consent of the surety, the surety's obligation may be discharged if the modification materially increases its risk. Restatement (Third) of Suretyship and Guaranty § 41(b)(i) (1996).[5] *See Wiegand v. State,* 363 Md. 186, 768 A.2d 43, 49–50 (2001). In the context of an appearance bond, this means that if the court releases the defendant in violation of the terms of the contract without the consent of the bondsman, the bond may be exonerated if the release materially increases the risk the bondsman agreed to accept at the outset.

---

**4.** The bonds in each of these cases stated, "VOID after adjudication." The bondsmen correctly do not argue that the court's acceptance of the guilty pleas by Sokol and Peña terminated the bonds; the bondsmen apparently acknowledge that "adjudication," within the meaning of the bonds, does not occur until entry of a judgment of conviction, which typically occurs upon sentencing. Ariz. R.Crim. P. 26.1(a) ("The term judgment means the adjudication of the court based upon ... the plea of the defendant."); Ariz. R.Crim. P. 26.2(b) ("[J]udgment ... shall be pronounced and entered together with the sentence."); *State v. Perez,* 172 Ariz. 290, 291, 836 P.2d 1000, 1001 (App.1992) (acceptance of guilty plea not an entry of final judgment; "[j]udgment is not final until it is orally pronounced and entered in the court's minutes.").

**5.** "If the principal obligor and the obligee agree to a modification, other than an extension of time or a complete or partial release, of the principal obligor's duties pursuant to the underlying obligation: ... (b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation: (i) if the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification." Restatement (Third) of Suretyship and Guaranty § 41 (1996). In the absence of controlling Arizona authority, we look to the Restatement for guidance. *Tierra Ranchos Homeowners Ass'n v. Kitchukov,* 216 Ariz. 195, 201, ¶ 24, 165 P.3d 173, 179 (App. 2007).

*United States v. Aguilar*, 813 F.Supp. 727, 728–29 (N.D.Cal.1993) (citing Restatement (First) of the Law of Security § 128(a)) (bond exonerated when prosecution permitted defendant to travel out of state pursuant to cooperation agreement after he had pled guilty); *Vaughn*, 11 P.3d at 214, ¶ 11; *State v. Weissenburger*, 189 N.J.Super. 172, 459 A.2d 693, 696 (N.J.Super.App.1983) (reversing forfeiture order after prosecutor "materially altered the condition of the bond" by agreeing to cooperation agreement that allowed defendant to flee); *see United States v. Gambino*, 809 F.Supp. 1048, 1055 (S.D.N.Y.1992) (removal of electronic monitoring bracelet did not materially increase risk that defendant would flee).[6]

▆▆▆ ¶ 13 The bondsmen here point out that their bonds incorporated Rule 7.2(c)(1) by law and argue the rule was breached when the court released the defendants. *See Surety Ins.*, 123 Ariz. at 569–70, 601 P.2d at 332–33. In both case of these cases, however, the prosecution and the defense agreed to waive application of Rule 7.2(c)(1). Pursuant to Arizona Rule of Criminal Procedure 17.4(a), the prosecution and the defense "may negotiate concerning, and reach an agreement on, any aspect of the case." To be sure, the authority Rule 17.4(a) grants the prosecution and the defense to negotiate an agreement (and the power it grants the court to approve such an agreement) is not unlimited. *See State v. Regenold*, 227 Ariz. 224, 226, ¶ 8, 255 P.3d 1028, 1030 (App.2011) (court may not "impose an illegal sentence, even if the defendant has agreed to it"). The bondsmen, however, offer no legal support for the proposition that the superior court lacks discretion to release a defendant when the prosecution and the defense have agreed pursuant to Rule 17.4(a) to waive application of Rule 7.2(c)(1), a companion procedural provision.

¶ 14 The bondsmen cite *State v. Cocio*, 138 Ariz. 4, 5–6, 672 P.2d 956, 957–58 (App.1983), in which we held the superior court had "exceeded its jurisdiction" by releasing a convicted defendant in violation of Rule 7.2(c)(1). The prosecution in that case, however, opposed release and sought to have the defendant remanded into custody. Under the circumstances, the *Cocio* court used the term "jurisdiction" to mean "the authority to do a particular thing," not subject-matter jurisdiction. *See Taliaferro v. Taliaferro*, 186 Ariz. 221, 223, 921 P.2d 21, 23 (1996) (distinguishing between imprecise uses of word "jurisdiction" in particular contexts). We do not read *Cocio* to preclude a superior court from accepting a stipulation by the prosecution and the defense to release a defendant who has pled guilty and who will be sentenced to a period of incarceration.

¶ 15 In sum, although the bondsmen correctly argue their appearance bonds incorporated Rule 7.2(c)(1) by law, the bonds likewise also incorporated Rule 17.4(a), which grants the defense and the prosecution the power to negotiate a waiver of Rule 7.2(c)(1) and the court the power to approve such an agreement. Accordingly, the release orders did not constitute material breaches requiring exoneration of the bonds.

### CONCLUSION

¶ 16 Arizona Rule of Criminal Procedure 17.4(a) grants the superior court the power to accept a waiver of Rule 7.2(c)(1) by the defendant and the State and allow the temporary release of a defendant who has pled guilty to a felony requiring incarceration. Because both Rule 17.4(a) and 7.2(c)(1) were incorporated by law into the appearance bonds at issue, we affirm the superior court's forfeiture order.

THOMPSON, Judge, specially concurring.

¶ 17 Appellants argue that the bonds should not be forfeited because, assertedly,

---

**6.** Other courts have observed in *dicta* that the release of a defendant who has pled guilty and faces a certain term of significant incarceration materially increases the risk that the defendant will flee. *See Rodriquez v. People*, 191 Colo. 540, 554 P.2d 291, 293 (1976) (after the court accepts the defendant's guilty plea, "the defendant no longer enjoys any hope for acquittal, but is faced

with the hard reality of the sentencing procedure"); *State v. Calcano*, 397 N.J.Super. 302, 937 A.2d 314, 318 (N.J.Super.App.2007); *Valles*, 143 P.3d at 500; *State v. Corl*, 58 N.C.App. 107, 293 S.E.2d 264, 267 (1982). *But see United States v. Wray*, 389 F.Supp. 1186, 1191 (W.D.Mo. 1975) (rejecting exoneration, noting courts commonly stay execution of sentences).

the court violated procedural rules in continuing the defendants on release status after their guilty pleas were entered. We have rejected this assertion, and affirm. I agree with this analysis and disposition.

¶ 18 I depart from the majority's analysis as to the contractual nature of the bondsman's undertaking. When we have acknowledged that the bond has been likened to "a contract between the suret[y] and the state," as Division Two did in *In re Bond in Amount of $75,000,* we only note that an analogy has been drawn in the cited source. 225 Ariz. 401, 405, 238 P.3d 1275, 1279 (stating that annotation at 32 A.L.R.4th 504, § 2(a) compares the bond to a contract). An analogy is a "similarity" or "comparison." Random House Dictionary 74 (2d ed.1987). This analogy extends to the point that the surety is allowed, by Arizona's positive law, an opportunity to explain and establish that its failure on the bond undertaking should be excused or mitigated. Ariz. R.Crim. P. 7.6(d). In my view, the analogy does not extend the multiplicity of contract defenses to a bondsman who has failed to produce the defendant for his court appearances.

¶ 19 A bail bond is a recognizance "that guarantees an unjailed criminal defendant's return for a court date." Black's Law Dictionary 1299 (8th ed.2004). Black's cites, as primary authority for the proposition contended for by the majority, ("Recognizances are aptly described as 'contracts made with the Crown in its judicial capacity' "), William R. Anson, *Principles of the Law of Contract* 80–81 (Arthur L. Corbin ed., 3d Am. Ed.1919).

¶ 20 However, Anson further explains that recognizances have "little of the true nature of a contract," as bondsmen do not really negotiate a contract with the court. *Id.* at 81 ("We need consider these obligations no further."). A court issues an order regarding release. *See* Ariz. R.Crim. P. 7. Defendants, and bondsmen, are expected to comply with such orders.