908 P.2d 1081

**STATE of Arizona, Plaintiff–Appellee,**

v.

**L.Z. (Jack) JACKSON, dba A–Jax Bond Company, Real Party in Interest–Appellant.**

**No. 1 CA–CV 94–0302.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 19, 1995.

William J. Ekstrom, Jr., Mohave County Attorney by James J. Zack, Deputy County Attorney, Kingman, for Plaintiff–Appellee.

Danny L. Cowser, Flagstaff, for Real Party in Interest–Appellant.

**OPINION**

LANKFORD, Judge.

In this case, we hold that the procedures for forfeiture of a bail bond are governed by Arizona Rule of Criminal Procedure ("Ariz. R.Crim.P.") 7.6(d) and not by Ariz.Rev.Stat. Ann. ("A.R.S.") section 13–3973. We also hold that appellant Jackson ("A–Jax Bond Company") has failed to establish that the failure to set a forfeiture hearing within the time required by Rule 7.6(d) warrants reversal of the trial court's forfeiture judgment.

A–Jax issued a $10,000 bail bond to secure the appearance of criminal defendant Paul Allen Bowling, who is not a party to this appeal. Bowling failed to appear for his arraignment on November 12, 1994. At the State's request, the trial court immediately issued a bench warrant for Bowling's arrest and ordered the clerk to send a copy of its minute entry order to A–Jax. Two and one-half months later, on January 26, 1994, A–Jax filed a motion to exonerate the bond. In response, the State filed a motion for bond forfeiture. The court initially set a hearing on the motions for February 14, 1994, but later postponed it to April 19, 1994. After considering memoranda and oral argument of counsel, the trial court ordered the bond forfeited. We have jurisdiction over the appeal by A–Jax pursuant to A.R.S. section 12–2101(B).

Rule 7.6(d), Arizona Rules of Criminal Procedure, effective September 1, 1973, provides:

> **Forfeiture.** If at any time it appears to the court that a condition of an appearance bond has been violated, it shall require the parties and any surety to show cause why the bond should not be forfeited, setting a hearing thereon within 10 days. If at the hearing, the violation is not explained or excused, the court may enter an appropriate order of judgment forfeiting all or part of the amount of the bond, which shall be

enforceable by the prosecutor as any civil judgment.

A.R.S. section 13–3973 provides:

> If at any time it appears to the court that a condition of the appearance bond has been violated, the court shall require the parties and any surety to appear and show cause why a warrant should not issue for the arrest of the defendant, setting a hearing on the alleged violation within ten days. If at the hearing, the violation is not explained or excused, the court may issue a warrant for the arrest of the defendant and shall set a date not less than ninety nor more than one hundred eighty days thereafter for a forfeiture hearing.

A–Jax contends that section 13–3973 is controlling, and that because the trial court failed to follow the statutory procedure, the court lacked jurisdiction to forfeit the bonds.

We agree that the superior court did not follow the statutory procedure in issuing the arrest warrant and in forfeiting the bond. The statute contemplates a hearing within ten days, at which time the surety may appear to show cause why a warrant should not issue for the defendant's arrest. If the defendant's violation is not explained or excused, the court may issue a warrant and must set a forfeiture hearing on a date not less than 90 nor more than 180 days from the show cause hearing. Here the trial court issued a bench warrant immediately instead of setting a hearing within ten days. Also, the court did not set a date for the forfeiture hearing after issuing the arrest warrant but waited for nearly three months to set a forfeiture hearing.

However, we need not address the effect of noncompliance with the statute on the trial court's forfeiture order because we conclude that Rule 7.6(d), and not the statute, governs the forfeiture procedures. The statute is preempted by the supreme court's constitutional rule-making authority.

■ The Arizona State Constitution confers on our supreme court the "[p]ower to make rules relative to all procedural matters in any court." Ariz. Const. Art. 6, § 5(5). The rule-making power is vested in the supreme court exclusively. *State v. Blazak,* 105 Ariz. 216, 217, 462 P.2d 84, 85 (1969); *Arizona Podiatry Association v. Director of Insurance,* 101 Ariz. 544, 546, 422 P.2d 108, 110 (1966).

Statutory procedures adopted by the legislature which are inconsistent with procedural rules adopted by the supreme court have been held unconstitutional. *See, e.g., State v. Fowler,* 156 Ariz. 408, 413, 752 P.2d 497, 502 (App.1987), *approved, State v. Bejarano,* 158 Ariz. 253, 254, 762 P.2d 540, 541 (1988); *see also Daou v. Harris,* 139 Ariz. 353, 358, 678 P.2d 934, 939 (1984) (holding that a statutory rule requiring medical malpractice actions to be referred to a medical review panel could not operate to extend the time provided in the Arizona Rules of Civil Procedure for answering a civil complaint).

■ The procedures adopted by the Legislature in A.R.S. section 13–3973 conflict with those adopted by the Arizona Supreme Court in Rule 7.6(d). The statutory procedure requires the court to hold a show-cause hearing before the trial court may issue a bench warrant for the arrest of a non-appearing criminal defendant. The supreme court's rule does not so limit the power of a court to issue a bench warrant.[1] Moreover, the statutory procedure requires the trial court to set a forfeiture hearing no less than ninety days and no more than 180 days after the show cause hearing. In comparison, the supreme court's rule allows—indeed requires—the forfeiture hearing to be held

---

1. Rule 7.6(d) does not address the issuance of a bench warrant. However, Ariz.R.Crim.P. Rule 7.4(a) authorizes the superior court to issue a bench warrant immediately on a breach of a criminal defendant's conditions of release. Rule 7.4(a) provides:

> a. **Initial Decision.** At the initial appearance before a magistrate, a determination of the conditions of release shall be made. The court shall issue an order containing the conditions

of release and shall inform the accused of the conditions, the possible consequences of their violation, and that *a warrant for his or her arrest may be issued immediately upon report of a violation.*

(Emphasis added). The trial court's immediate issuance of a bench warrant upon learning of Bowling's failure to appear was precisely in accord with this rule.

much sooner, within ten days of the defendant's failure to appear.

A–Jax argues that we should nevertheless apply the statute because it is substantive rather than procedural. Section 13–3973 is a statute of limitations, A–Jax contends, and thus it is a substantive provision that does not usurp the supreme court's authority to make rules of procedure.

We disagree because section 13–3973 is not a statute of limitations. In *State v. Fowler*, 156 Ariz. at 413, 752 P.2d at 502, we rejected a claim that a legislative rule requiring criminal defendants to file petitions for post-conviction relief within one year of conviction was a statute of limitation. In doing so, we distinguished "[t]ime limits prescribed for steps to be taken subsequent to the commencement of a case" from criminal statutes of limitation, which limit the State's right to commence the case. *Id.* at 411, 752 P.2d at 500.

In *Fowler* we held that the one-year deadline for post-conviction relief petitions was procedural because it prescribed procedures to be followed after the State initiates criminal proceedings against a defendant. Because the legislature's rule was procedural and conflicted with a rule of procedure adopted by the supreme court allowing motions for post-conviction relief to be filed at any time, we held that the supreme court's rule prevailed. *Id.* at 413, 752 P.2d at 502.

Similarly, the time requirements in A.R.S. section 13–3973 are procedural because they govern the methods by which the courts enforce the State's substantive right to ask that a bail bond be forfeited. *See Heat Pump Equipment Co. v. Glen Alden Corp.*, 93 Ariz. 361, 363, 380 P.2d 1016, 1017 (1963) (defining a procedural rule as one which governs the judicial process for enforcing rights and duties recognized by substantive law, but does not abridge, enlarge or modify the rules

of decision by which the court will adjudicate those rights and duties). Section 13–3973 does not limit the time in which a motion to forfeit a bond may be brought; rather, it provides time limits for the orderly disposition of a forfeiture action after the action has been commenced.

■ Furthermore, the statutory language does not support A–Jax's position. A true statute of limitations fixes a concrete limit within which an action must be brought. *See Hall v. Romero*, 141 Ariz. 120, 126, 685 P.2d 757, 763 (App.1984). Section 13–3973 does not contain an express bar against a forfeiture action, and therefore cannot be interpreted to be a statute of limitation:

> The legislature must expressly declare that a statute of limitations bars an action before it can be given effect.... The legislature is perfectly capable of expressing a statutory bar when it so intends and we will not read such a result into a statute absent a clear expression.

*Matter of Estate of O'Connor*, 139 Ariz. 450, 453, 679 P.2d 96, 99 (App.1984) (citations omitted). The Legislature uses clear and consistent language in expressing its intent to provide a limitations period that bars actions not brought within the period.[2] In contrast, section 13–3973 contains no language of limitation.

We also reject A–Jax's argument that the statutory 90 to 180 day hearing parameters are substantive "jurisdictional" requirements for bond forfeiture. A–Jax cites *State v. Nunez*, 173 Ariz. 524, 844 P.2d 1174 (App. 1992) for this argument. In *Nunez*, the State moved for forfeiture of a bond after the criminal charges against the defendant had been dismissed. The State argued that forfeiture was proper even after criminal charges were dismissed. Its theory was that only post-dismissal forfeiture was possible under A.R.S. section 13–3973 because that statute permitted a forfeiture hearing only after 90 days elapsed since the show cause

---

**2.** When creating a statute of limitation, the Legislature often provides that an "action" must or shall be "commenced within" or "brought within" a specified time period "and not afterwards" or "not thereafter." *See, e.g.*, A.R.S. §§ 12–522 *et seq.* (1992 and Supp.1995), 28–1868 (1989), 38–602(A) (1985), 47–2725(A) (1988). Another method of creating a limitation period is to state that no civil action or suit may be brought unless

commenced within a specified time frame. *See, e.g.*, A.R.S. §§ 6–153(C), 6–943(H), 6–975(B), 6–1112(C) (1989 and Supp.1995). Other statutes merely state the time-period during which an action "may" be brought. *See, e.g.*, A.R.S. § 12–2453(F) (Supp.1995). Still another method is to simply provide that an action is "barred" unless "commenced" within a specified time period. *See, e.g.*, A.R.S. § 44–1410 (1994).

hearing, and in *Nunez* the charges were dismissed before the 90–day period expired. *Id.* at 527, 844 P.2d at 1177.

We agreed with the State that section 13–3973 "precludes the state from obtaining a bond forfeiture for ninety days after a warrant issues" and that the statute "clearly requires the court to hold the forfeiture hearing within the window period of 90 to 180 days" after the warrant is issued.[3] *Id.* However, we also held that the statutory limit was "of no help to the state" because the statute had not been followed: The court failed to hold a hearing within 180 days after the arrest warrant issued, instead holding the hearing 210 days later. *Id.*

A–Jax's interpretation of *Nunez* is that the State is not entitled to forfeiture if a forfeiture hearing is not held within the 90 to 180 day period listed in section 13–3973.[4] We do not agree that *Nunez* indicates that the 90 to 180 day limit is "jurisdictional." *Nunez* merely declined to allow the State to take advantage of the provisions of a statute that had not been followed.

■ Moreover, a time limit is not necessarily "jurisdictional" or substantive even if failure to comply with it results in dismissal of a claim. In many cases, rules of procedure adopted by the Arizona Supreme Court allow for dismissal of a claim for violation of the procedural rules. *See, e.g.,* Ariz.R.Civ.P. Rules 4(i), 16(f), 26(f), 26.1(g), 37(b)(2)(C) and 41(b); Ariz.R.Crim.P. Rules 8.6, 13.1(c), 15.7(a)(5) and 16.6(b); Ariz.R.Civ.App.P. Rules 9(a), 12(c) and 15(c) (providing for dismissal for breach of various procedural rules). A procedural rule does not become substantive or "jurisdictional" merely because the sanctions available for violation of the rule affect the viability of a claim. In this case, even if the sanction for violating the 90 to 180 day limits in section 13–3973 is dismissal of the State's forfeiture claim, the statute is a procedural rule governing the

disposition of forfeiture actions. We therefore hold that section 13–3973 must yield to Rule 7.6(d) under Article 6, section 5 of our Constitution.

■ Having held that Rule 7.6(d) of the Arizona Rules of Criminal Procedure governs bail bond forfeiture actions, we now decide whether the trial court's failure to comply with the rule requires us to reverse the trial court's judgment granting forfeiture. We agree with A–Jax that the trial court did not comply with the terms of Rule 7.6(d). Rule 7.6(d) requires forfeiture hearings to be set within ten days of the day the trial court learns that a condition of the appearance bond has been violated, but here the trial court did not set a hearing until more than 90 days after it learned that Bowling had failed to appear. Nevertheless, we affirm the forfeiture judgment because the trial court's failure to strictly comply with Rule 7.6(d) did not prejudice A–Jax and because A–Jax had an opportunity to contest the forfeiture.

*State v. Rogers,* 117 Ariz. 258, 261, 571 P.2d 1054, 1057 (App.1977) supports our decision. In that case, we held that the trial court's order of partial rather than total forfeiture of a bail bond could not be justified merely because the forfeiture hearing was not held within ten days after the defendant's failure to appear. We wrote:

The 10 day time period is not jurisdictional but is designed as a prompt enforcement for the benefit of the State as obligee and not for the benefit of the surety. Like any other debtor, the surety cannot complain if his creditor does not demand payment immediately when due. Under the new rule there is a requirement that the surety be given notice of the forfeiture hearing.

Notice was given [in this case] and the surety has shown no prejudice by the delay. Under these circumstances it would appear that the delay would accrue to the

---

**3.** The court in *Nunez* did not address the conflict between section 13–3973 and Rule 7.6(d).

**4.** Neither section 13–3973 nor any other statute provides a sanction for violation of the 90 to 180 day limit. We do not understand why the rule from *State v. Rogers,* 117 Ariz. 258, 261, 571 P.2d 1054, 1057 (App.1977) cannot apply to violation of section 13–3973 just as it applies to violation

of the time limits in Rule 7.6(d). The parties have not briefed the question of whether the rule from *Rogers*—which was that violation of the time limits in Rule 7.6(d) is not grounds for dismissal of a forfeiture action unless the surety can show prejudice from the violation—also applies to section 13–3973, so we do not address that question here.

surety's benefit in providing more time to find the defendant and explain his absence. *Id.* (citations omitted).[5]

Similarly, in *State v. Rocha,* 117 Ariz. 294, 297, 572 P.2d 122, 125 (App.1977), we rejected an argument that the trial court's failure to comply with the ten-day time limit in Rule 7.6(d) warranted reversal of a forfeiture order. We said that "[t]he purpose of the rule is to give the parties and any surety an opportunity to be heard." *Id.* Because the party opposing forfeiture in that case had an opportunity to contest forfeiture, although outside the ten-day limit in Rule 7.6(d), we refused to reverse the forfeiture order for failure to strictly comply with Rule 7.6(d). *Id.*

In this case, A–Jax was immediately notified of Bowling's failure to appear and was given an opportunity to contest the forfeiture. The trial court received memoranda and conducted a hearing, allowing A–Jax the opportunity to contest the forfeiture. Although it is true that the forfeiture hearing was not held ten days after Bowling's failure to appear, as required by Rule 7.6(d), A–Jax has shown no prejudice to it from the failure to hold the hearing within ten days. When, as in this case, a surety is afforded an opportunity to contest forfeiture, and when the surety does not establish prejudice from the untimely hearing, dismissal of the State's forfeiture action is not a required sanction for violation of the time provision of Rule 7.6(d).

The judgment is affirmed.

GARBARINO and SULT, JJ., concur.

---

**5.** The requirement that the surety receive *notice* of the defendant's failure to appear does, of course, protect the surety. *See Louisiana v. Bullock,* 412 So.2d 1059, 1060 (La.1982) ("Requiring prompt and adequate notice to the surety enhances the surety's chances of locating the defendant and surrendering him to the court for trial, a desirable objective from the point of view of both the surety and the state."). Here, A–Jax does not complain that it did not receive notice of Bowling's failure to appear. The trial court sent a copy of its minute entry arrest warrant to A–Jax. A–Jax complains that the forfeiture hearing was not held within ten days after Bowling's failure to appear. We fail to see any prejudice that might accrue to the surety from failure to hold a forfeiture hearing within the required ten day period when the surety knows that the defendant has failed to appear. We agree with the statement in *Rogers* that delay in holding the forfeiture hearing benefits the surety who has notice of the defendant's failure to appear because the delay gives the surety more time to locate the defendant to bring him to trial or to explain the defendant's breach of the conditions of release.