224 P.3d 210

**STATE of Arizona, Appellee,**

v.

**BAIL BONDS USA and American Contractors Indemnity Company, Appellants.**

**No. 1 CA–CV 08–0408.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 14, 2010.

---

Andrew P. Thomas, Maricopa County Attorney by Sarah L. Corcoran, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Clifford Sherr, Phoenix, Attorney for Appellant.

## OPINION

IRVINE, Judge.

¶ 1 Appellants Bail Bonds USA and American Contractors Indemnity Company (collectively, the Surety) posted a $25,000 appearance bond for criminal defendant Sylvia Portillo–Corrales ("Portillo–Corrales"). Portillo–Corrales was then released into federal custody, where she remained. Under these circumstances, we conclude that the trial court acted prematurely in forfeiting the bond, and therefore reverse.

## BACKGROUND

¶ 2 Portillo–Corrales was indicted in 2005 for several class two and three felonies relating to drugs. At that time, a warrant for her arrest was issued. It appears that Portillo–Corrales remained at large until January 1, 2008, when she was arrested and brought before a magistrate. The magistrate set a secured appearance bond of $25,000 and scheduled an arraignment for January 7, 2008.[1]

---

S.Ct. 2089, 23 L.Ed.2d 656 (1969), thereby assuring that Szpyrka is not penalized merely for exercising his right to challenge his sentence through post-conviction proceedings.

1. Arizona law allows criminal defendants charged with class two and three felonies to be held without bail if they are in the country illegally and the proof is evident or the presumption great regarding the charges. Ariz.Const.art. 2, § 22; Arizona Revised Statutes ("A.R.S.") section 13–3961(A)(5)(b) (Supp.2009); *see also Segura v. Cunanan,* 219 Ariz. 228, 234–36, ¶¶ 24–32, 196 P.3d 831, 837–39 (App.2008). There is no indication in the record that the magistrate was

¶ 3 The Surety posted a $25,000 appearance bond for criminal defendant Portillo–Corrales on January 2, 2008. The Surety Bond Receipt for Portillo–Corrales stated in capital letters: " * * * *DEFENDANT WILL NOT BE RELEASED DUE TO INS HOLD* * * *." [2] An additional form entitled "Information for Bond Posters Concerning I.N.S. Holds" was signed by a representative of the Surety. That form stated before anything else that "[i]f you post a bond for this person, he/she will NOT be released from jail."

¶ 4 When Defendant failed to appear for the scheduled arraignment on January 7, 2008, the court issued a bench warrant and set a bond forfeiture hearing for March 4, 2008. At that hearing, a representative of the Surety told the court that Portillo–Corrales had never been released from custody but had instead been transferred first into INS custody and then into the custody of the U.S. Marshal. Unsatisfied with the information provided by the Surety, the court continued the matter for one week to allow the Surety to present "actual documentation or testimony" that Portillo–Corrales had never left custody. The court stated that the central question to be answered at the next hearing was whether Portillo–Corrales was in custody when the bench warrant was issued.

¶ 5 On March 11, 2008, the Surety's representative presented an unsworn document identified as an "Affidavit of Exoneration Of Bond" signed by an officer of the Central Arizona Detention Center. The document stated that the Surety's representative is seeking exoneration of the bond "in accordance with A.R.S. § 13–3974 and Rule 7.6(c) of the Rules of Criminal Procedures [sic]." It also stated Portillo–Corrales had "been surrendered" for a bond violation and had "since been in the custody of Central Arizona Detention Center, Florence, AZ." The affidavit appears to be signed on March 4, 2008, by a "Sgt. Torres," with no other identifying information provided. The court reviewed the document and noted that it did not indicate that Portillo–Corrales was in custody at the time of the hearing or remained in custody thereafter which is what the bonding company was alleging that the document demonstrated. Also submitted was a response to a records request made by the Surety to the Maricopa County Sheriff's Office indicating that Portillo–Corrales had been released to "immigration" on January 4, 2008. The representative also stated that he had made a formal request to ICE regarding Portillo–Corrales' dates of incarceration, but had not yet received a response.

¶ 6 Finding the evidence the Surety submitted was insufficient, the court forfeited the bond in its entirety because the Surety had failed to demonstrate "to the Court's satisfaction, that the defendant was in custody on the date of the hearing or as the bonding company has indicated, the defendant [was] still in custody with I.N.S." The court further stated that:

> Given that there has not been such a presentation, the defendant's [sic] failed to appear to provide good cause for her failure to appear on January 7th, and there's been no presentation as to the defendant's efforts, to, [sic] if in fact she was deported, to receive a parole visa to appear before the Court, and the warrant is still active on this matter. The Court at this point does not find good cause for the defendant's failure to appear or mitigation and therefore will at this point order that the bond be forfeited in its entirety.

¶ 7 On March 21, 2008, the Surety filed a motion for new trial attaching, along with documents previously submitted to the court, a letter from a Supervisory Deputy U.S. Marshal and a request by the Surety to the Field Office Director of U.S. Immigration Control and Enforcement and a response thereto. The letter from the U.S. Marshal

---

asked to apply these provisions, nor were any proof or details presented concerning the charges. The Release Questionnaire stated that the defendant was in the country illegally, but the probable cause statement simply said that the defendant was arrested on an outstanding warrant.

2. "INS" is the United States Immigration and Naturalization Service, which is now named Immigration and Customs Enforcement ("ICE").

stated that Portillo–Corrales had appeared before a United States Magistrate Judge on January 7, 2008, and was remanded to the custody of the United States Marshal on that date, after which she was transported to the Central Arizona Detention Center where she remained in custody pending her federal case. The State responded to the Surety's motion indicating that it did not object to the court setting a new bond forfeiture hearing but did object to exonerating the bond without a new hearing regarding the defendant's custodial status at the time of the arraignment.

¶ 8 On April 9, 2008, the court denied the Surety's motion for new trial noting in its minute entry that "[t]he Court has received both ... [the] Motion for New Trial ... and the State's Response. The Court has considered both, as well as the record from the proceedings on this matter before the Bond Forfeiture Court on March 4, 2008, and March 11, 2008." The Surety timely appealed from that decision, and we have jurisdiction pursuant to A.R.S. § 12–2101(B), (F) (2003).

### DISCUSSION

¶ 9 "The primary purpose of an appearance bond is to assure a defendant's appearance at the trial or other hearings." *State v. Garcia Bail Bonds,* 201 Ariz. 203, 208, ¶ 19, 33 P.3d 537, 542 (App.2001). Under Rule 7.6(c)(1) of the Arizona Rules of Criminal Procedure, a trial court must issue a bench warrant and set a bond hearing if "it appears to the court that the released person has violated a condition of an appearance bond." The court may order all or part of an appearance bond forfeited "[i]f at the hearing, the violation is not explained or excused." Ariz.R.Crim.P. 7.6(c)(2).

¶ 10 With respect to bond forfeiture, "the trial court may exercise its discretion in determining whether to forfeit all, part, or none of the appearance bond pursuant to Rule 7.6(c)(2) and whether any part of the

bond not forfeited should be exonerated pursuant to Rule 7.6(d)(2) or (3)." *State v. Old West Bonding Co.,* 203 Ariz. 468, 475, ¶ 25, 56 P.3d 42, 49 (App.2002). "But the grant of discretion to a court does not mean that it can be exercised arbitrarily." *Id.* Instead, this discretion must be exercised reasonably, and in furtherance of governing law. *See id.*

¶ 11 "It is well settled that a surety assumes the risk of a defendant's failure to appear." *In re Bond Forfeiture in Pima County Cause No. CR–20031154,* 208 Ariz. 368, 369, ¶ 4, 93 P.3d 1084, 1085 (App.2004) (hereinafter *"Pima County Bond "*). Thus, the burden is on the Surety to show by a preponderance of the evidence an excuse or explanation for Portillo–Corrales's failure to appear. *See State v. Martinez–Gonzales,* 145 Ariz. 300, 302, 701 P.2d 8, 10 (App.1985).

¶ 12 The essential question before us is whether a bond should be forfeited or exonerated if a defendant has been released by the State into federal custody and remains there. It is clear that transfer to federal custody followed by deportation does not by itself excuse nonappearance. *See Pima County Bond,* 208 Ariz. at 370, ¶ 7, 93 P.3d at 1086 (citing *People v. Argonaut Ins. Co.,* 64 Cal.App.3d 665, 666, 134 Cal.Rptr. 614, 615 (1976) (rejecting a surety's claim that a defendant's deportation, standing alone, excused the surety's failure to surrender the defendant.) ).[3] In Pima County Bond the court explained:

In determining whether to order an appearance bond forfeited, a trial court may consider all the relevant circumstances, including, for example, the defendant's willfulness in violating the order to appear, the effort and expense expended by the surety in trying to locate and apprehend the defendant, any intangible costs, or any other aggravating or mitigating factors that prevented the defendant from appearing.

*Id.* at ¶ 5. This case is different from *Pima County Bond* because the defendant has not

---

**3.** Indeed, it appears that in at least one case a defendant strategically sought to avoid trial on serious charges by posting bond on the state charges and then requesting and accepting voluntary deportation after being released into fed-

eral custody. *State ex rel. Thomas v. Blakey,* 211 Ariz. 124, 126, ¶ 4, 118 P.3d 639, 641 (App.2005) (trial court should allow trial in absentia when the defendant was voluntarily absent from trial).

been deported, but remains in federal custody.

¶ 13 Because the defendant remains in custody, this case is similar to *Garcia Bail Bonds,* in which we held that incarceration in a different jurisdiction may constitute good cause for failure to appear when the incarceration was for a crime committed before the release of the defendant on bond and when the incarceration was the expected outcome of the defendant's release. *Garcia Bail Bonds,* 201 Ariz. at 205–07, ¶¶ 10–16, 33 P.3d at 539–41 (explaining that where the "expected outcome" of the defendant's "invited return to Colorado" to surrender on outstanding warrants, was "further imprisonment," there was reasonable cause for the defendant's non-appearance in Arizona). In this case, Portillo–Corrales's incarceration by federal authorities was the expected outcome of her release. Consequently, although Portillo–Corrales would not have been released into federal custody but for the Surety's act of posting bond, we cannot say that her nonappearance is due to her own fault. Moreover, Portillo–Corrales's federal incarceration was also based on actions occurring before her release; her alleged illegal presence in the United States. These facts were clear to all parties from the bonding documents.

¶ 14 We conclude that the trial court erred by denying the motion for new trial. Although the Surety failed to produce any evidence or even make assertions on the record that Portillo–Corrales expressed any desire to abide by her promise to appear or made any effort herself to do so through counsel, the Surety provided documentation that supported the contention that Portillo–Corrales was in custody at the time of the hearing and that this information was not made available to the Surety until after the bond forfeiture hearing. The lack of certain knowledge on the part of the Surety about the defendant's situation was the direct result of Portillo–Corrales being in federal custody. It is apparent from the record that although the Surety had good reason to believe that Portillo–Corrales was in federal custody, it had no way of proving this or knowing it for sure until the federal authorities chose to tell them. Consequently, it was extremely difficult, if not impossible, for the Surety to provide evidence of Portillo–Corrales' actions or availability. Therefore, we find that the trial court acted prematurely in forfeiting the bond.

¶ 15 This does not mean, however, that the trial court erred in refusing to exonerate the bond. In *Garcia Bail Bonds* we stated:

> The state acquiesced in the defendant's return to Colorado and defendant did not violate any condition of the appearance bond by leaving Arizona. If it chooses to do so, the state may re-obtain custody of the defendant on the untried indictment by following the procedures set forth in the Interstate Agreement on Detainers, found in A.R.S. § 31–481 (1970). There being no further need for an appearance bond, we conclude that surety is entitled to have the bond exonerated pursuant to Rule 7.6(d)(1).

201 Ariz. at 208, ¶ 20, 33 P.3d at 542. Here, it is unclear from the record whether Arizona is able to regain custody of Portillo–Corrales from the federal authorities, or whether she is likely to be deported before Arizona can obtain custody. Therefore, the need for an appearance bond may continue to exist.

¶ 16 The evidence showed that Portillo–Corrales was in federal custody on the day of her hearing and every day thereafter. Given the difficulties of obtaining information from the federal authorities, once her presence in federal custody was established the Surety should have been given an opportunity to show that an appearance bond was no longer necessary because the State could re-obtain custody of Portillo–Corrales from the federal government. If it appears that custody cannot be re-obtained, and the most likely course of events will be Portillo–Corrales's deportation, the Surety has the burden of proving the defendant will honor the appearance bond. Failing that, the trial court has the discretion to forfeit the bond even if the defendant has not yet been deported.

### CONCLUSION

¶ 17 The judgment of the superior court forfeiting the Surety's appearance bond is

reversed and this matter is remanded for further proceedings consistent with this decision.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and PETER B. SWANN, Judge.