IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| In re | ) ) ) | 2 CA-CV 2010-0005 |
|  | ) | DEPARTMENT B |
| BOND IN THE AMOUNT OF $75,000. | ) |  |
|  | ) ) ) | O P I N I O N |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20082026

Honorable Lori Jones, Judge Pro Tempore

AFFIRMED

---

Barbara LaWall, Pima County Attorney
  By Thomas J. Rankin                                                    Tucson
                                                       Attorneys for Appellee

T.S. Hartzell                                                           Tucson
                                                       Attorney for Appellant

---

V Á S Q U E Z, Presiding Judge.

¶1          Gloria Urias and American Liberty Bail Bonds (collectively, "American Liberty") appeal from the trial court's judgment forfeiting a $75,000 appearance bond after the defendant, Jesus Gonzalez-Lugo, failed to appear for court proceedings, including his criminal trial.  American Liberty contends the court lacked jurisdiction to initiate bond forfeiture proceedings after granting a judgment of acquittal and after failing

to issue an arrest warrant for the defendant while the case was pending. For the reasons set forth below, we affirm.

**Factual and Procedural Background**

¶2        We view the facts in the light most favorable to upholding the trial court's judgment. *State v. Garcia Bail Bonds*, 201 Ariz. 203, ¶ 5, 33 P.3d 537, 539 (App. 2001). Gonzalez-Lugo was arrested and charged with possessing a narcotic drug for sale and possessing drug paraphernalia. The magistrate conducting his initial appearance ordered Gonzalez-Lugo held without bond based on the state's allegation that he was present in the United States illegally. The trial court subsequently modified Gonzalez-Lugo's release conditions, setting an appearance bond of $75,000. On June 12, 2008, Gloria Urias, apparently as an agent of American Liberty, posted the bond in cash.

¶3        Gonzalez-Lugo was deported to Mexico on June 20, 2008, and he failed to appear at a case management conference in July and a pretrial conference in August. At the pretrial conference, the court set a trial date and informed defense counsel that he "b[ore] the responsibility for arranging the defendant's return from Mexico for the trial." Gonzalez-Lugo failed to appear for trial and was tried in absentia. At the conclusion of the state's case, the court granted defense counsel's motion for a judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P., finding there was "no substantial evidence to warrant a conviction, based upon insufficient identity of the defendant."

¶4        After the trial court excused the jury, counsel moved to exonerate the appearance bond. The court denied the motion and "referred [the matter] to the Superior Court Hearing Officer for the commencement of bond forfeiture proceedings, based upon

2

the defendant's failure to appear for his trial." Noting that American Liberty had been unable to locate Gonzalez-Lugo, the hearing officer set a hearing "with directions to the [surety] to appear and show cause why the bond filed with the Court for the benefit of the defendant should not be forfeited." After a contested hearing, the court ordered the entire amount of the bond forfeited, and this timely appeal followed.

## Standard of Review

¶5     We review the trial court's order forfeiting the bond for an abuse of discretion, but we review *de novo* its interpretation of the rules governing bail bonds. *Garcia Bail Bonds*, 201 Ariz. 203, ¶ 5, 33 P.3d at 539. And, "[w]e interpret rules of procedure, as we do statutes, by their plain meaning." *State v. Old West Bonding Co.*, 203 Ariz. 468, ¶ 12, 56 P.3d 42, 45 (App. 2002). We look first to the rule's language because "'the best and most reliable index of a [rule's] meaning is its language and, when the language is clear and unequivocal, it is determinative of the [rule's] construction.'" *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 8, 152 P.3d 490, 493 (2007), *quoting Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991).

## Discussion

### A. Jurisdiction

¶6     First, American Liberty contends that, after the trial "[c]ourt . . . acquitted Gonzalez-Lugo, it divested itself of jurisdiction . . . [and] . . . no longer had the authority to order a hearing on the allegation [he had violated] a condition of the appearance bond," because criminal jurisdiction is based on the existence of a valid, pending complaint.

3

However, "[f]orfeiture proceedings . . . are simply a streamlined substitute for a civil suit resulting from a breach of contract." *Garcia Bail Bonds*, 201 Ariz. 203, ¶ 14, 33 P.3d at 540; *see also State v. Copperstate Bail Bonds*, 222 Ariz. 193, ¶ 15, 213 P.3d 342, 344 (App. 2009). They thus are independent of the underlying criminal proceedings, and a lack of jurisdiction over the criminal defendant does not deprive the court of jurisdiction over the breach of contract claim between the state and the surety.[1] *See State ex rel. Ronan v. Superior Court*, 96 Ariz. 229, 231, 393 P.2d 919, 920 (1964) (forfeiture proceedings civil in nature resulting from breach of contract).

¶7 American Liberty cites *Bail: Duration of Surety's Liability on Pretrial Bond*, 32 A.L.R. 4th 504, § 2(a) (1984), to support its argument that "the jurisdiction of a court to initiate forfeiture proceedings ends when the surety's 'right to surrender' ends." It asserts "the surety's right to surrender the defendant is at the core of the relationship between [the] surety and [the defendant]." And it maintains a surety no longer retains the right to surrender the defendant after an acquittal has been entered. The annotation on which American Liberty relies suggests that the right of surrender "appears to be a common factor" in determining a surety's liability under a bond. 32 A.L.R. 4th 504,

---

[1]American Liberty also cites *State v. Ross*, 475 A.2d 347 (Conn. 1984), for the proposition that, "when a criminal case is disposed of without the possibility of appeal, no jurisdiction remains to forfeit an appearance bond." However, we find no support for this proposition in that case. In *Ross*, the issue was whether the defendant, who had not violated her bond conditions, could be discharged from release status after the charges against her had been dismissed, but while the dismissal was pending on appeal. 475 A.2d at 348. The court rejected her claim because the state's jurisdiction over her continued through the pendency of the appeal, and it therefore could not discharge her completely from the conditions of release. *Id*. *Ross* did not address the issue raised here: whether proceedings to forfeit an appearance bond may be initiated after the court's jurisdiction over the defendant in the criminal case has terminated.

4

§ 2(a). However, it also provides that "[t]he number of possible bond conditions, combined with the differing statutes employed by the various states, prevent the formulation of any general rules as to the point in the proceedings at which a pretrial bail bond surety is released from liability by operation of law." And, even though the right to surrender may be central to the surety-defendant relationship, "[a] bail bond [also] is considered a contract between the suret[y] and the state." *Id.* "The primary purpose of an appearance bond is to assure a defendant's appearance at the trial or other hearings." *Garcia Bail Bonds*, 201 Ariz. 203, ¶ 19, 33 P.3d at 542.

¶8         American Liberty does not dispute that the purpose of its undertaking was to secure Gonzalez-Lugo's appearance at trial, notwithstanding his intervening deportation to Mexico. Nor does it dispute that he had failed to appear for various pretrial proceedings and for trial. *State v. Bail Bonds USA*, 223 Ariz. 394, ¶ 12, 224 P.3d 210, 213 (App. 2010) ("It is clear that transfer to federal custody followed by deportation does not by itself excuse nonappearance."). Finally, American Liberty has made no showing it lacked the opportunity or the ability to locate Gonzalez-Lugo and surrender him to the trial court while the criminal proceedings were pending. Its liability is based on the failure to honor its contractual obligation to ensure Gonzalez-Lugo's presence at trial and is not related to anything that occurred after the court entered its judgment of acquittal. American Liberty's liability therefore did not end as a matter of law when its right to surrender Gonzalez-Lugo ended. The court did not lack jurisdiction to order the bond forfeiture proceedings by waiting to initiate them until after it had entered a judgment of acquittal.

## B. Mandatory Exoneration

**¶9** Relying primarily on *State v. Nunez*, 173 Ariz. 524, 844 P.2d 1174 (App. 1992), American Liberty argues the "Arizona Rules [of Criminal Procedure] mandate exoneration of an appearance bond when judgment of acquittal is entered before any action is taken on the appearance bond." In *Nunez*, the defendants had violated their release conditions by failing to appear, but the charges against them subsequently were dismissed with prejudice. 173 Ariz. at 525, 844 P.2d at 1175. A few weeks after the dismissal, the defendants moved to exonerate their bonds, and, after a contested hearing, the trial court ordered the bonds forfeited. *Id*. at 525-26, 844 P.2d at 1175-76. On appeal, the defendants argued the bonds should have been exonerated because the indictment had been dismissed before the forfeiture proceedings began. *Id*. at 526, 844 P.2d at 1176. This court agreed, relying primarily upon Rules 7.6(e) and 16.5(e), Ariz. R. Crim. P., concluding that, because there was no further need for the appearance bonds after the charges had been dismissed, the defendants had been entitled to have them exonerated. *Id.*

**¶10** However, *Nunez's* analysis does not apply to this case. As it did when *Nunez* was decided, Rule 16.5(e), now renumbered as Rule 16.6(e), provides that, "[w]hen a prosecution is dismissed, the defendant shall be released from custody . . . and any appearance bond exonerated." *Nunez*, 173 Ariz. at 526, 844 P.2d at 1176. But Rule 16 applies only to pretrial proceedings; its scope has been limited expressly to the time "between arraignment and trial." *See* Ariz. R. Crim. P. 16.1(a). Thus, Rule 16 does not apply here. And, in any event, the inclusion within Rule 16 of a separate bond-

6

forfeiture provision evinces an intent to create an exception to the general rule for bond-forfeiture procedures provided in Rule 7.6(d), which are the procedures applicable to this case.

¶11 Additionally, Rule 7.6 has been amended since *Nunez* was decided. Then, Rule 7.6(e) provided, "At any time that the court finds that there is no further need for an appearance bond, it shall exonerate the appearance bond and order the return of any security deposit." *Nunez*, 173 Ariz. at 526, 844 P.2d at 1176. The rule now provides that, "[a]t any time *before* [*a*] *violation* that the court finds there is no further need for an appearance bond, it shall exonerate the appearance bond and order the return of any security deposited." Ariz. R. Crim. P. 7.6(d)(1) (emphasis added). Thus, when a defendant has violated the conditions of his release, Rule 7.6 does not require exoneration of an appearance bond upon the termination of the criminal proceedings. In the event of a violation, a trial court now has the discretion to determine whether to forfeit the bond based on the circumstances of the particular case, and that determination is no longer dependent upon a continuing need for the bond. *See* Ariz. R. Crim. P. 7.6(d)(2)-(3). Therefore, applying Rule 7.6 as it existed when he failed to appear, because Gonzalez-Lugo violated his bond conditions, the court was not required to exonerate the bond at the time the charges were dismissed.

¶12 American Liberty nonetheless argues the addition of "[t]he language, 'at any time before a violation,' can not be construed to authorize a post-acquittal initiation of a forfeiture proceeding" because it would lead to the absurd result that "a case . . .

dismissed on motion [pursuant to Rule 16.6(e)], even without prejudice, . . . is in a position superior to [one] being resolved by an unappealable acquittal." We disagree.

¶13 "The very purpose of [an appearance] bond [i]s to assure the defendant's presence at the time of trial." *United Bonding Ins. Co. v. City Court of Tucson*, 6 Ariz. App. 462, 464, 433 P.2d 642, 644 (1967); *see also Nunez*, 173 Ariz. at 526, 844 P.2d at 1176. When a defendant violates an appearance bond by failing to appear for a pretrial hearing but the charges are dismissed before trial, the state has suffered little, if any, inconvenience as a result of the defendant's absence. Thus, Rule 16.6 permits exoneration of the bond notwithstanding the violation, if the state has failed to initiate forfeiture proceedings before a dismissal is final.

¶14 But when a defendant fails to appear for trial, the state must either (1) proceed with a trial wherein identification of the defendant as the perpetrator will be more difficult and the likelihood of an acquittal due to the defendant's voluntary absence is increased, or (2) postpone the trial after the state has put the time, effort, and expense into preparing for it and risk that the strength of the case will erode with the passage of time. If Rule 7.6 required the exoneration of a bond upon acquittal notwithstanding the defendant's failure to appear, it would reward defendants for failing to appear and would provide an incentive for defendants, at least in cases where identification is a key issue, to employ non-appearance as a trial strategy. In some measure, forfeiture of the bond can compensate the state for the waste of its resources caused by the defendant's absence from trial, and Rule 7.6 affords the state greater latitude to initiate proceedings under

8

these circumstances. The trial court therefore did not err in denying American Liberty's motion to exonerate the bond.

## C. Necessity of Arrest Warrant

¶15        American Liberty also argues "an arrest warrant is a necessary prerequisite for a bond forfeiture proceeding," and therefore, the initiation of "bond forfeiture proceedings without the issuance of a warrant . . . requires reversal of the trial court's order and judgment of forfeiture [with] instructions to exonerate the bond at issue." Rule 7.6(c) provides, in pertinent part:

> (1) **Notice and Hearing**. If at any time it appears to the court that the released person has violated a condition of an appearance bond, it shall issue a bench warrant for the person's arrest. Within ten days after the issuance of the warrant, the court shall notify the surety, in writing or by electronic means, that the warrant was issued. The court shall also set a hearing within a reasonable time not to exceed 120 days requiring the parties and any surety to show cause why the bond should not be forfeited. The court shall notify the parties and any surety of the hearing in writing or by electronic means.

American Liberty is correct that, according to Rule 7.6, when a bond condition has been violated, the trial court is required both to issue a warrant and set a hearing for forfeiture of the bond. *See Phoenix Newspapers, Inc. v. Superior Court*, 180 Ariz. 159, 161, 882 P.2d 1285, 1287 (App. 1993) ("shall" generally implies mandatory provision). However, the rule does not condition the initiation of forfeiture proceedings upon the issuance of an arrest warrant.

¶16        Furthermore, although a trial court's lack of strict compliance with the procedures provided in Rule 7.6(c) constitutes error, we repeatedly have rejected the

9

claim that this sort of error necessitates automatic reversal and have refused to reverse the court's ruling unless the surety actually suffered prejudice. *In re Bond Forfeiture in CR-94019213*, 191 Ariz. 304, ¶ 10, 955 P.2d 541, 544 (App. 1998) ("We conclude the surety must demonstrate that it was, in fact, prejudiced by the court's failure to promptly inform it of the defendant's failure to appear before a bond forfeiture order may be reversed on this ground."); *State v. Jackson*, 184 Ariz. 296, 300, 908 P.2d 1081, 1085 (App. 1995) (affirming forfeiture when failure to follow procedure of Rule 7.6 did not result in prejudice); *State v. Rogers*, 117 Ariz. 258, 261, 571 P.2d 1054, 1057 (App. 1977) (time limits of prior version of Rule 7.6 not jurisdictional); *State v. Rocha*, 117 Ariz. 294, 297, 572 P.2d 122, 125 (App. 1977) (failure to hold hearing within ten days, under prior version of Rule 7.6, harmless where "opportunity [to be heard] was provided and appellant availed himself of it").

¶17　　　　It is the surety's burden to "demonstrate that it was, in fact, prejudiced by the court's failure [to follow the procedures in Rule 7.6(c)] before a bond forfeiture order may be reversed," *Bond Forfeiture in CR-94019213*, 191 Ariz. 304, ¶ 10, 955 P.2d at 544, and American Liberty has made no attempt to meet this burden. The entire bond amount was subject to forfeiture in July 2008, ten months before trial, when Gonzalez-Lugo missed his first court hearing in violation of the conditions of the bond. *See* Rule 7.6(c). And during the ten months Gonzalez-Lugo was absent, American Liberty unquestionably had the authority to arrest and produce him even though a warrant had not been issued. *See State v. Affordable Bail Bonds*, 198 Ariz. 34, ¶ 17, 6 P.3d 339, 343 (App. 2000) ("'The right of the surety to recapture his principal is not a matter of

criminal procedure . . . . The bail [bondsman] can surrender his principal before the bond is forfeited, and arrest him for that purpose without process.'"), *quoting Fitzpatrick v. Williams*, 46 F.2d 40, 40-41 (5th Cir. 1931); *see also* A.R.S. § 13-3885. American Liberty failed to do so.

¶18        As noted above, American Liberty has not asserted that it otherwise was unaware of Gonzalez-Lugo's absence prior to the initiation of the bond forfeiture procdings or that it had attempted to apprehend and surrender Gonzalez-Lugo but in fact could not do so without the warrant. Even assuming American Liberty had been able to produce Gonzalez-Lugo, the trial court nonetheless had discretion to forfeit the entire amount of the bond if it found his absence was neither explained nor excused. *See* Rule 7.6(c)(2), (d); A.R.S. § 13-3974. American Liberty does not contend, and nothing in the record suggests, the court would have forfeited less than the entire amount of the bond under those circumstances. Therefore, we cannot say American Liberty has demonstrated it suffered prejudice as a result of the court's failure to issue an arrest warrant after finding Gonzalez-Lugo had violated the conditions of his release.

**Disposition**

¶19        We affirm the trial court's judgment forfeiting the appearance bond.

/s/ *Garye L. Vásquez*
_____
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
_____
PETER J. ECKERSTROM, Judge

/s/ *Virginia C. Kelly*
_____
VIRGINIA C. KELLY, Judge