IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

STATE OF ARIZONA,
*Plaintiff/Appellee,*

*v.*

INTERNATIONAL FIDELITY INSURANCE COMPANY AND
REGULATOR BAIL BONDS,
*Real Parties in Interest/Appellants.*

No. 2 CA-CV 2014-0157
Filed August 28, 2015

———————————————

Appeal from the Superior Court in Pima County
No. CR20121143-002
The Honorable Lori B. Jones, Judge Pro Tempore

**REVERSED AND REMANDED**

———————————————

COUNSEL

Barbara LaWall, Pima County Attorney
By Christopher L. Straub, Deputy Pima County Attorney, Tucson
*Counsel for Plaintiff/Appellee*

Clifford Sherr, Phoenix
*Counsel for Real Parties in Interest/Appellants*

**OPINION**

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Miller and Chief Judge Eckerstrom concurred.

E S P I N O S A, Judge:

**¶1**        International Fidelity Insurance Company (Surety), the surety for Regulator Bail Bonds (Regulator), appeals from the trial court's judgment and order forfeiting $95,000 of a $100,000 appearance bond posted on behalf of defendant Augustin Rivera. Surety argues the court abused its discretion in calculating the $5,000 exoneration and by failing to consider the efforts of the recovery agent and indemnitors as well as other relevant factors. It further contends the court abused its discretion by admitting into evidence certain state billing records. For the following reasons, we reverse and remand for further proceedings.

## Factual and Procedural Background

**¶2**        We examine the evidence in the light most favorable to upholding the trial court's judgment. *In re Bond in Amount of $75,000*, 225 Ariz. 401, ¶ 2, 238 P.3d 1275, 1277 (App. 2010). In March 2012, Rivera was arrested and charged with multiple felonies, including three counts each of armed robbery, aggravated assault with a firearm, aggravated robbery, and kidnapping. He was released from custody in June after Regulator posted a $100,000 appearance bond.[1] M.V., his mother, and E.G., his former girlfriend and the mother of his children, became indemnitors on the bond.

_____

[1] Rivera's bail bond and release order executed by the bondsman includes the following "bail release agreement":

> If the defendant has a pending criminal charge, this bond secures attendance at future court dates. Should the defendant fail to appear at any future court date for this charge, the bond may be forfeited.

**¶3**         In April 2013, the trial court set a joint trial date of September 10 for Rivera and his co-defendant, Rosario Soto. When Rivera and Soto failed to appear for a pretrial hearing, the court ruled that their trial would proceed in absentia. Neither man appeared at trial and, following the jury's guilty verdicts, the court ordered that a bench warrant issue for Rivera and that forfeiture proceedings commence. Rivera surrendered on October 31 following a standoff with twenty to thirty officers.[2] He was remanded to the Pima County jail on November 6, 2013, and on December 2, the court found that the state had proven Rivera's prior convictions. He was sentenced to a prison term exceeding thirty-one years on January 16, 2014.

**¶4**         On August 29, 2014, counsel for the state sent an electronic mail message to Surety's counsel providing evidence of jail and medical costs incurred by Rivera and Soto after their surrender.[3] Surety filed a motion in limine to preclude the evidence based on its untimely disclosure and because "the bills desired to be submitted are not only legally insufficient and are the legal obligation of the State, anyway." The court denied the motion and ordered that "the jail and medical cost records will be considered by the Court."

**¶5**         At the bond forfeiture hearing on September 18, 2014, Surety introduced evidence that its fugitive-recovery agent, Marvin Bordeaux, had spent hundreds of hours looking for Soto and Rivera.

---

I understand this bond is subject to forfeiture if the defendant fails to appear at any future court date.

[2]The two men were heavily armed and showed signs of drug use, with Soto so heavily drugged he required hospitalization.

[3]The state indicates the total claimed jail costs for Rivera was $7,039.12 based on "a per diem rate multiplied by the 84 days of Rivera's incarceration from November 6, 2013, through his sentencing on January 16, 2014, and his eventual release to the [Arizona] Department of Corrections on January 29, 2014." The medical bills were for Soto only and totaled approximately $80,000.

Bordeaux testified that, with the help of the indemnitors, he had tracked Rivera to Silver City, New Mexico[4] and had provided that information to the United States Marshal Service. A U.S. marshal based in New Mexico testified that, although initially guided by Bordeaux's information, he had used his own sources to locate Rivera in Hurley, New Mexico, a small town approximately ten miles from Silver City.

¶6          Following the hearing, the trial court stated that it found "no legally recognizable reason for the Defendant's failure to appear." It continued:

> I completely agree that . . . B[or]deaux's testimony is compelling. He obviously did a lot of work. . . . [T]his is the first time I've ever received this much information about what a bail agent is doing, and . . . he certainly did a lot of work.

The court noted that Rivera's family was in touch with Bordeaux and giving him information "but still . . . the circumstances of [Rivera's] surrender and all of that . . . influences me in my discretion to mitigate." The court explained its decision to exonerate $5,000 of the bond stating that Bordeaux had "claim[ed] his costs were [$]2[,]400 or [$]2[,]500 [and] I'm doubling that." It explained, "when [Bordeaux] testified . . . he said something about hundreds of hours [and] I don't think that was reflected in whatever he turned over to the company with respect to his hourly rate[, s]o I'll double it to [$]5,000." The court noted that Soto and Rivera "weren't in custody somewhere else and they were in touch with family members and they didn't come back." This appeal followed the court's formal order forfeiting $95,000 of the $100,000 bond.[5] We

---

[4] Bordeaux testified Silver City has a reputation for being hostile to law enforcement.

[5] The trial court's order did not contain language pursuant to Rule 54(c), Ariz. R. Civ. P., certifying that "no further matters remain pending and that the judgment is entered pursuant to Rule 54(c)."

have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and 12-2101(A)(1).

**Discussion**

**¶7**        Surety argues the trial court abused its discretion in calculating the $5,000 exoneration and by failing to consider the efforts of the recovery agent and indemnitors and other relevant factors. We review the court's order forfeiting the bond for an abuse of discretion, but consider its interpretation of rules governing bail bonds de novo. *State v. Garcia Bail Bonds*, 201 Ariz. 203, ¶ 5, 33 P.3d 537, 539 (App. 2001).

**¶8**        The primary purpose of an appearance bond is to ensure that the defendant appears at court proceedings. *Id.* ¶ 19. Under Rule 7.6(c), Ariz. R. Crim. P., a trial court has discretion to forfeit "all or part of the amount of [a surety] bond" when a criminal defendant "has violated a condition of [the] bond" and the violation "is not explained or excused." In determining whether a defendant's absence is excusable, a court reviews only the defendant's actions. *See Garcia Bail Bonds*, 201 Ariz. 203, ¶ 12, 33 P.3d at 540 ("[W]here a defendant's non-appearance is due to his own fault, the surety is not entitled to relief because the defendant's inability to appear is the result of his own voluntary act . . . .").

**¶9**        Pursuant to Rule 7.6, even when a defendant's actions are not excusable, a trial court has discretion to determine whether to exonerate all or part of a surety bond. *See State v. Old W. Bonding Co.*, 203 Ariz. 468, ¶ 25, 56 P.3d 42, 49 (App. 2002). In *Old West Bonding Co.*, we enumerated several factors "that might bear on the court's discretionary decision whether, and in what amount, to forfeit an appearance bond." *Id.* ¶ 26. Those factors include:

> (1) whether the defendant's failure to appear due to incarceration arose from a crime committed before or after being

---

This court stayed the appeal in order for Surety to obtain a final judgment certified under Rule 54(c), which it did.

released on bond; (2) the willfulness of the defendant's violation of the appearance bond; (3) the surety's effort and expense in locating and apprehending the defendant; (4) the costs, inconvenience, and prejudice suffered by the state as a result of the violation; (5) any intangible costs; (6) the public's interest in ensuring a defendant's appearance; and (7) any other mitigating or aggravating factors.

*Id.* "But the grant of discretion to a court does not mean that it can be exercised arbitrarily." *Id.* ¶ 25. Rather, it must be exercised reasonably, and in furtherance of governing law. *See id.*

**¶10** Citing *Old West Bonding Co.*, Surety argues the trial court "acted 'wildly and whimsically' and not reasonably" in exonerating only five percent of the bond. It points out that the indemnitors "provided critical information to the authorities which directly le[]d to the apprehension and surrender of . . . Rivera," particularly the information that Rivera was in Silver City, "an area notorious for . . . hostil[ity] to law enforcement." It also notes that despite knowing of Bordeaux's fee agreement [6] and finding his testimony "compelling," the court "disregarded the '100's and 100's of hours' he spent looking for Rivera as well as all of the efforts and information of the indemnitors" and calculated the exoneration by merely doubling Bordeaux's out-of-pocket expenses. Surety further asserts the court did not consider the following factors: that "the State suffered absolutely no 'cost, inconvenience or prejudice' whatsoever by Rivera's absconding, capture and return," because those costs were borne by New Mexico local authorities and the U.S. Marshal's Service; the costs claimed by the state were only "a few grand" for "additional time/costs in the Pima County jail"; the efforts by Bordeaux and the indemnitors to protect the public by locating Rivera; and the hardship to the indemnitors given the

---

[6]According to Surety, Bordeaux would have received a seven percent fee upon his apprehension and surrender of Rivera, but otherwise no payment.

forfeiture of ninety-five percent of the bond. Finally, Surety asserts the court's decision to "forfeit virtually all of the bond" is contrary to good public policy, which favors encouraging a bonding community to assist law enforcement in capturing defendants by providing pertinent information.

**¶11** On appeal, we presume the trial court exercised its discretion by considering all the relevant factors to determine whether to forfeit the entire bond amount or only a portion thereof.[7] *See Fuentes v. Fuentes*, 209 Ariz. 51, ¶ 32, 97 P.3d 876, 883 (App. 2004) (appellate court presumes trial court knows law and applied correct standard unless presumption rebutted by record). And we do not re-weigh those factors to determine whether we would reach the same decision as the trial court. *Cf. State v. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984); *Quigley v. City Court*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (App. 1982) (difference in judicial opinion not synonymous with abuse of discretion).

**¶12** "It is well settled . . . that a surety assumes the risk of a defendant's failure to appear." *In re Bond Forfeiture in Pima Cnty. Cause No. CR–20031154*, 208 Ariz. 368, ¶ 4, 93 P.3d 1084, 1085 (App. 2004). The burden is on Surety to establish, by a preponderance of the evidence, a valid excuse or explanation for Rivera's failure to appear. *State v. Bail Bonds USA*, 223 Ariz. 394, ¶ 11, 224 P.3d 210, 213 (App. 2010). Although Surety presented evidence regarding efforts by Bordeaux and the indemnitors to locate Rivera, it presented no evidence to explain or excuse Rivera's failure to appear or to indicate any "aggravating or mitigating factors that prevented [him] from appearing." *Pima Cnty. No. CR-20031154*, 208 Ariz. 368, ¶ 5, 93 P.3d at 1086. The trial court was therefore within its discretion to forfeit all or part of the bond. *See* Ariz. R. Crim. P. 7.6(c).

---

[7]We note that Surety failed to request specific findings of fact and conclusions of law pursuant to Rule 52(a), Ariz. R. Civ. P., to illuminate the trial court's rationale and "enable this court to examine the bases for the . . . court's decision." *In re $ 26,980.00 U.S. Currency*, 199 Ariz. 291, ¶ 7, 18 P.3d 85, 88 (App. 2000).

**¶13**        As noted above, however, the trial court's discretion must be exercised reasonably. *Old W. Bonding Co.*, 203 Ariz. 468, ¶ 25, 56 P.3d at 49.   Here, in making its decision, the court considered evidence of the costs of incarcerating Rivera in the Pima County jail following his capture, through his sentencing, and until his release to the Arizona Department of Corrections (ADOC). Although a court may properly evaluate "the costs, inconvenience, and prejudice suffered by the state *as a result of the violation*," *id.* ¶ 26 (emphasis added), in this case the county would have incurred the costs of jailing Rivera following his conviction regardless of his nonappearance.   The purpose of an appearance bond is to ensure that the defendant appears at court proceedings, *Garcia Bail Bonds*, 201 Ariz. 203, ¶ 19, 33 P.3d at 542, not to recoup expenses the state would have incurred without issuance and violation of a bond, *cf. State v. Surety Ins. Co.*, 127 Ariz. 493, 496, 622 P.2d 52, 55 (App. 1980) (reversing forfeiture decision based on defendant's violations unrelated to appearance bond).

**¶14**        The state implicitly acknowledges that for the jail costs to be considered in the bond forfeiture proceeding, they had to have been incurred as a result of the violation.   It asserts the jail costs "directly resulted from [Rivera's] failure to appear," and notes that in calculating eighty-four days of jail costs, it "assume[d] in part that had Rivera attended his trial he would have remained in release status pending sentencing."   The state acknowledges, however, that Rivera's release following conviction would have been "unlikely" given that Rule 7.2(c)(1), Ariz. R. Crim. P., bars such release "unless it is established that there are reasonable grounds" to believe the conviction may be set aside or reversed on appeal.   Even so, the state maintains, it is "certain . . . that Rivera spent more time in the Pima County jail than he would have had he attended his trial in the first instance."[8]   The state provides no support for this statement, nor do

---

        [8]Seemingly, once Rivera was in custody in the Pima County jail, the scheduling of his sentencing hearing and his transfer to ADOC would be routine, administrative decisions, as would follow a typical criminal conviction reasonably resulting in a sentence of imprisonment, and the state does not indicate otherwise.

we see any in the record; we therefore disregard it. *See* Ariz. R. Civ. App. P. 13(a)(7), (b)(1) (argument "must contain . . . [a]ppellant's contentions . . . with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies").

**¶15**　　　Because there is no basis for finding the jail cost an additional expense incurred as result of Rivera's violation, the trial court abused its discretion in considering it as a factor in forfeiting his bond.[9] *Cf. State v. Guilliams*, 208 Ariz. 48, ¶ 27, 90 P.3d 785, 793 (App. 2004) (when basis for restitution order lacking, proper remedy is to vacate that portion of sentence and remand to trial court). We therefore reverse the bond forfeiture judgment and remand the case to the trial court for its reconsideration, or if appropriate, a new hearing on the matter, excluding evidence of the jail costs.[10] We express no opinion on the court's ultimate decision whether, and in what amount, to forfeit the bond.

**Disposition**

**¶16**　　　For the foregoing reasons, the trial court's bond forfeiture judgment is reversed and the matter is remanded for further proceedings consistent with this decision.

---

[9]The state points out that the trial court did not cite the jail costs as a factor in its ruling. Although the court did not expressly do so, it had stated its intent to consider jail costs, and its ruling does not exclude them as a factor.

[10]In so holding, we in no way preclude jail costs generally from a trial court's consideration in deciding to forfeit an appearance bond. *See Old W. Bonding Co.*, 203 Ariz. 468, ¶ 26, 56 P.3d at 49 (not possible to catalog all circumstances that might bear on court's discretionary decision whether and in what amount to forfeit appearance bond). Such costs may be properly considered if incurred as a result of a defendant's failure to appear.