NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ALL OUT NOW BAIL BONDS, et al., *Appellants.*

No. 1 CA-CV 18-0342
FILED 6-18-2019

Appeal from the Superior Court in Maricopa County
No. 2016-002038-001
The Honorable Thomas A. Kaipio, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Peter S. Spaw
*Counsel for Appellee*

Adair Law Group PLLC, Phoenix
By Marc A. Adair
*Counsel for Appellants*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Vice Chief Judge Peter B. Swann and Judge Diane M. Johnsen joined.

---

**M c M U R D I E**, Judge:

**¶1**        All Out Now Bail Bonds and Bankers Insurance Company (collectively, "Bail Bonds") appeal the superior court's order forfeiting $75,000 of a $100,000 appearance bond posted on behalf of Jose Angel Acosta. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        In May 2016, Acosta was charged with burglary, two counts of kidnapping, two counts of armed robbery, two counts of aggravated robbery, and two counts of aggravated assault. In September 2016, Acosta was released from custody pending trial after Bail Bonds posted a $100,000 appearance bond on his behalf.

**¶3**        On September 7, 2017—the date scheduled for trial—Acosta failed to appear. The superior court issued a bench warrant for Acosta's arrest and scheduled a bond forfeiture hearing. Under Arizona Rule of Criminal Procedure ("Rule") 7.6(c)(1),[1] the court was required to notify Bail Bonds within ten days, or by September 18, 2017, that it had issued the warrant. However, Bail Bonds did not receive notice of the bench warrant until September 26, 2017. Bail Bonds moved for continuances of the bond-forfeiture hearing to allow time to locate and surrender Acosta. The motions were granted, but Bail Bonds ultimately did not find him.

**¶4**        At the bond forfeiture hearing, Bail Bonds argued that the court should substantially exonerate the bond for two reasons. First, Bail Bonds claimed they suffered prejudice by the court's failure to supply them with timely notice of the bench warrant because they missed opportunities to arrest Acosta immediately after he failed to appear for trial. To support

---

[1]        Rule 7.6 was amended while the bond forfeiture proceedings in this case were pending. Because the new version contains no material changes relevant to this appeal, we cite to the current version of the rule.

their argument, Bail Bonds presented the court with sign-in sheets allegedly showing that Acosta physically checked into Bail Bonds' office after the bench warrant had issued but before Bail Bonds received notice. Second, Bail Bonds argued the bond's indemnitors, Acosta's grandparents, would suffer significant financial hardship if the court forfeited the bond in full.

**¶5**		After the hearing, the court exonerated $25,000 of the $100,000 bond and forfeited the remaining $75,000. The court explained that "most of [its] reasoning" in deciding to exonerate the bond partially was based on Bail Bonds' hardship argument, and "not the notice issue." Regarding Bail Bonds' contention that they were prejudiced by the delay in receiving notice of the warrant, the court explicitly stated it did not find it "that compelling or strong in this particular case." Bail Bonds then moved for a new trial under Arizona Rule of Civil Procedure 59(a), arguing the court failed to properly weigh the prejudice they suffered by the untimely notice of the bench warrant. The court denied the motion, stating:

> THE COURT FINDS that from the evidence presented at the hearing, [Bail Bonds] failed to prove actual prejudice. The Court will not presume prejudice to the bonding company under these facts.

Bail Bonds timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(5)(a).

## DISCUSSION

**¶6**		We review the superior court's forfeiture determination and the denial of a motion for a new trial for an abuse of discretion. *State v. Old West Bonding Co.*, 203 Ariz. 468, 471, ¶ 9 (App. 2002) (forfeiture determination); *Jaynes v. McConnell*, 238 Ariz. 211, 215–16, ¶ 13 (App. 2015) (denial of a motion for new trial). We examine the record in the light most favorable to sustaining the judgment. *Old West*, 203 Ariz. at 471, ¶ 9.

**¶7**		The primary purpose of an appearance bond is to ensure a criminal defendant appears at court proceedings. *State v. Garcia Bail Bonds*, 201 Ariz. 203, 208, ¶ 19 (App. 2001). The superior court has the discretion to forfeit all or part of the bond if a defendant violates a condition of the appearance bond, and the violation is not explained or excused. Ariz. R. Crim. P. 7.6(c)(3); *see also* Ariz. R. Crim. P. 7.6(d)(5) (unless exoneration is required under Rule 7.6(d)(1) or (3), the court has the discretion to decide whether and how to exonerate the bond). Relevant factors for the court to consider when determining whether to forfeit all, part, or none of the bond may include:

(1) whether the defendant's failure to appear due to incarceration arose from a crime committed before or after being released on bond; (2) the willfulness of the defendant's violation of the appearance bond; (3) the surety's effort and expense in locating and apprehending the defendant; (4) the costs, inconvenience, and prejudice suffered by the state as a result of the violation; (5) any intangible costs; (6) the public's interest in ensuring a defendant's appearance; and (7) any other mitigating or aggravating factors.

*Old West*, 203 Ariz. at 475, ¶ 26. The surety has the burden to show by a preponderance of the evidence some explanation or other mitigating factor excusing the defendant's non-appearance. *See State v. Bail Bonds USA*, 223 Ariz. 394, 397, ¶ 11 (App. 2010).

**¶8** Bail Bonds argues that the superior court erred by failing to recognize and adequately weigh the prejudice they contend they suffered by the untimely notice of the bench warrant. But the court was well within its discretion to conclude that Bail Bonds' prejudice argument was not "compelling or strong" and that the evidence presented at the hearing "failed to prove actual prejudice." The only proof of prejudice Bail Bonds presented at the hearing was the sign-in sheets, which Bail Bonds never sought to admit as evidence or to corroborate or authenticate with witness testimony or other evidence. *See* Ariz. R. Evid. 803(6) (conditions necessary for admission under the business-records exception must be established by testimony or certification); Ariz. R. Evid. 901(a) ("[T]he proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); *see also In re Bond Forfeiture in CR-94019213*, 191 Ariz. 304, 306, ¶ 8 (App. 1998) (refusing to "presume prejudice" from court's failure to provide timely notice under Rule 7.6(c)(1) when surety failed to provide sufficient evidence of prejudice). The court highlighted the evidentiary concerns surrounding the sign-in sheets when it stated that it did not know "who[se] signature" was on the sheet, and that Bail Bonds' counsel was only "avowing that those are the signature[s] of [Acosta]."

**¶9** Even assuming the sign-in sheets were authentic, and Acosta had signed on the dates shown, they at most show the court's violation of Rule 7.6(c)(1) might have caused Bail Bonds to miss a single opportunity to

surrender Acosta back into custody.[2] The court could reasonably conclude that evidence of a single missed chance to arrest Acosta—balanced against the more than five months Bail Bonds had thereafter to locate and surrender Acosta—was insufficient to prove they suffered prejudice from the court's delay in providing notice of the bench warrant. *See State v. Sun Sur. Ins.*, 232 Ariz. 79, 82, ¶ 7 (App. 2013) ("[T]he purpose of [Rule 7.6(c)(1)] is to allow the surety an opportunity to find and surrender the defendant and thereby mitigate any forfeiture."). Moreover, Bail Bonds does not acknowledge that even if they had arrested Acosta promptly after receiving notice, the superior court still had the discretion to forfeit the bond. *See Old West*, 203 Ariz. at 475, ¶ 28; *CR-94019213*, 191 Ariz. at 307, ¶ 9 ("[E]ven if the surety does quickly locate and surrender the errant defendant to the court . . . this accomplishment does not necessarily obviate the surety's affirmative obligation to explain or excuse the release condition violation.").

¶10 While Bail Bonds correctly asserts that the superior court must exercise its discretion under Rule 7.6(d)(5) "reasonably, not whimsically," *Old West*, 203 Ariz. at 475, ¶ 25, our review of the record reveals no cause to conclude the court acted unreasonably here. *See Sun Sur. Ins.*, 232 Ariz. at 83, ¶ 10 (cautioning that "[a] surety may not be entitled to exoneration of its bond any time a trial court fails to provide the notice required by Rule 7.6(c)(1)"). The court considered Bail Bonds' prejudice and hardship arguments, found the hardship argument persuasive, properly balanced it against other factors favoring forfeiture (such as the willfulness of Acosta's failure to appear), and partially exonerated the bond. We will not substitute our judgment for that of the superior court by reweighing the evidence presented or the discretionary factors upon which the court relied. *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52, ¶ 11 (App. 2009). Accordingly, we conclude the court did not abuse its discretion by forfeiting $75,000 of the $100,000 bond or by denying Bail Bonds' motion for a new trial.

---

[2] According to Bail Bonds' counsel and the sign-in sheets, Acosta checked in on September 7, September 13, and September 21, 2017. Only one alleged check-in date, September 21, 2017, occurred after Rule 7.6(c)(1)'s notice period.

## CONCLUSION

¶11          For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA